UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH, ) | |
| ) | Case No. 21-cv-1739 |
| Plaintiff, ) | |
| ) | Judge: Hon. John Robert Blakey |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| THE INDIVIDUALS, CORPORATIONS, ) | |
| LIMITED LIABILITY COMPANIES, ) | JURY TRIAL DEMANDED |
| PARTNERSHIPS, AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE A HERETO, ) | |
| ) | |
| Defendants. ) | |

**CAFEPRESS' EMERGENCY MOTION TO VACATE PRELIMINARY INJUNCTION, UNFREEZE ASSETS, AND COMPEL DISCOVERY**

Defendant PlanetArt, LLC, the owner of the CafePress website and brand, hereby moves to vacate the preliminary injunction, which was entered in this case cased based on false statements made by Plaintiffs and their counsel – at least as applied to the CafePress website – and was never served on PlanetArt. CafePress has been a well-known, US-based business for over twenty years. PlanetArt, which acquired the CafePress brand and website last September, is also a well-known U.S.-based business with approximately 500 employees and annual revenue in excess of $400 Million The CafePress website sells user-generated products as well as licensed products; it sells products licensed by *dozens* of well-known brands, including Warner Brothers, Hasbro, Marvel, Peanuts, and JoyPixels.

Plaintiff obtained an *ex parte* temporary restraining order against "CafePress" based on a series of false and conclusory allegations. These include allegations that CafePress purportedly conceals its identity (Compl. ¶ 5), resides in the People's Republic of China (Compl. ¶ 13), uses multiple fictitious names and addresses (Compl. ¶ 18), regularly moves funds from Amazon to

offshore accounts (Compl. ¶ 21). None of these allegations are remotely true; CafePress is a well-known easy-to-locate US-based business. Plaintiff submitted declarations in support of its motions, but these declarations merely repeat the conclusory allegations of the complaint without providing any supporting facts or evidence – and are demonstrably false with respect to CafePress.

Based on these false statements, Plaintiff obtained a temporary restraining order in early April. Plaintiff did not make *any* effort to serve this order on CafePress or PlanetArt.

In early May, Plaintiff asked the Court to enter a preliminary injunction, but did not tell the Court that it had never served the temporary restraining order, the motion for preliminary injunction, or any notice of a preliminary injunction hearing, on CafePress.[1] The Court even noted in its minute entry that "[n]o defendant has filed an appearance in this matter or otherwise objected in response to the TRO," apparently unaware that Plaintiff hadn't bothered to *tell* any defendant – or at least CafePress – about the TRO or even the existence of a lawsuit.

The Court's temporary restraining order is void due to Plaintiff's false statements to the Court. The preliminary injunction is additionally void because it was issued without notice; Rule 65 does not authorize *any* court to issue preliminary injunctions without notice under any circumstances.

It appears that Plaintiff attempted to proceed without notice in order to prevent any party from pointing out some glaring problems in the underlying merits of Plaintiff's case. Plaintiff's purported "emoji" trademarks are almost certainly invalid for non-use, fraud, descriptiveness and genericness. "Emoji" is a generic, descriptive term, and Plaintiff appears to have ginned up a scheme to shake down foreign companies over a mark which should never have issued in the first

---

[1] The fact that Plaintiff *just* obtained a summons from the Clerk of Court a few days ago suggests that Plaintiff has not served *any* defendant with notice of *any* order or motion.

2

place. Accordingly, in addition to immediately vacating the preliminary injunction and TRO, the Court should order Plaintiff to immediately produce relevant discovery designed to address what appear to be serious problems in Plaintiffs' case.

Plaintiff recently tried to avoid addressing its false statements and failure to serve by attempting to unilaterally dismiss this case pursuant to Rule 41. Plaintiff's attempted Rule 41 dismissal is ineffective because Rule 41 only permits dismissal of an "action," not individual defendants. Further, Plaintiff cannot avoid the serious ethical concerns raised by its behavior – even if Plaintiff's case is deemed dismissed under Rule 41, the Court still has jurisdiction to address wrongful seizure under Rule 65, and to address PlanetArt's claims for fees and costs as the "prevailing party" in an "exceptional case" under 15 U.S.C. § 1117(a).

I.  **THE RELEVANT FACTS**

A.  **CafePress is a legitimate, well-known, US-based company**

CafePress has been a well-established US-based company for over twenty years. (Bloxberg Decl., ¶¶ 4-7.) CafePress was headquartered in Louisville, Kentucky, and PlanetArt is based in California. (Id. at ¶¶ 2-6.) PlanetArt currently has approximately 500 employees and in excess of $400 Million in annual revenue. (Id. at ¶ 6.)

Basic background information on CafePress and PlanetArt is easy to locate; this information is contained on the Wikipedia page dedicated to CafePress. (Id. at ¶ 7.) CafePress is also regularly covered in the press. For example, Bloomberg news reported on PlanetArt's recent acquisition of CafePress from Shutterfly. (Id.) PlanetArt is listed on LinkedIn with approximately 500 employees. (Id.) The CafePress brand also maintains a social media presence on Facebook, Instagram, and Pinterest, among other platforms. (Id.)

PlanetArt operates the CafePress marketplace website at www.CafePress.com, where consumers can purchase licensed products, or create their own. (Bloxberg Decl. at ¶ 8.)

CafePress sells products licensed by many brands, including Warner Brothers, Hasbro, Marvel, Peanuts, and JoyPixels. (Id. at ¶ 9.) Any member of the public – including Plaintiff's counsel – can easily learn that CafePress has many officially licensed products, as those products are prominently displayed in an "Officially Licensed" section of the website. (Id.) CafePress' emoji-themed products are licensed from JoyPixels. (Id. at ¶ 10.) Indeed, any user who searches for "emoji" is redirected to the "Joy Pixels Gifts" portion of CafePress' website. (Id.)

CafePress prohibits, deters and punishes intellectual property infringement by users, as detailed in its Terms of Service and policies relating to intellectual property. First, any brand owner who believes its rights are infringed may follow the link "Report an Alleged Infringement," which is present at the bottom of every page of CafePress' website. (Bloxberg Decl. at ¶¶ 12-13; *see also* https://www.cafepress.com/p/terms-conditions.) CafePress' Terms of Service also:

- State that users represent and warrant that they own or have a license for content they use;
- Forbid users from using Third-party Intellectual Property without authorization; and
- Provide instructions on how to report an alleged intellectual property violation.

(Id.)

Despite CafePress having a specific procedure for reporting any alleged intellectual property violation, Plaintiff made no effort to do so before seeking its TRO against CafePress.

**B.  Plaintiff's allegations about CafePress are false.**

The key allegations of Plaintiff's Complaint, and of its motions seeking injunctions, are utterly false as applied to CafePress. While a court ordinarily takes a plaintiff's allegations as true at the beginning of a litigation, a Plaintiff seeking an *ex parte* TRO has a special duty to the Court to present the Court with accurate information. Plaintiff, and its counsel, have thoroughly

4

violated this duty.

Before addressing Plaintiff's false statements, CafePress must note a number of significant red flags regarding the underlying merits of Plaintiff's case. The first red flag is the fact that the term "emoji" is obviously a descriptive, generic term; any claim that Plaintiff somehow controls the use of this term worldwide should be met with skepticism. The first emoji were created in the 1990's. *See, e.g., Pardes, Arielle, The WIRED Guide to Emoji,* February 1, 2018 (located at wired.com/story/guid-emoji/) (explaining history of emoji). Emoji are also part of the Unicode technical standard – raising serious question as to whether *anyone* can ever attempt to "own" the term. *See, e.g., Davis, Mark and Edberg, Peter, Unicode Technical Standard #51, September 18, 2020 (located at Unicode.org/reports/tr51/) (detailing history of emoji proposals going back to April, 2000).* The second red flag is that Plaintiff's trademark registrations list *hundreds* of goods. This means the registrations are almost certainly subject to cancellation for non-use, as it is extremely unlikely that Plaintiff is *actually selling* all of these products in commerce in the United States. The third red flag is that Plaintiff has not made any showing that it is actually *using* the marks in commerce in the United States for the *same* goods and services as the accused products – a statutory requirement of calling something a "counterfeit." *See* 15 U.S.C. § 1116(d)(1)(B)(i). The fourth red flag is that the Complaint and supporting declarations are entirely conclusory; the declarations, especially, provide very little *factual* information and simply parrot the allegations of the Complaint. Had Plaintiff given CafePress notice of these proceedings, CafePress could have easily pointed out these red flags, and demonstrated why Plaintiff is *not* likely to succeed on the merits of *any* of its claims. While Plaintiff has attempted to make this case *look* like an ordinary counterfeiting case, it appears this case is *actually* a scheme to shake down hundreds of foreign businesses with a bogus trademark

registration.

Indeed, the Complaint and motions are focused *exclusively* on alleged nebulous foreign counterfeiters, but these allegations make no sense as applied to CafePress. Plaintiff alleged that CafePress purportedly conceals its identity (Compl. ¶ 5), resides in the People's Republic of China (Compl. ¶ 13), uses multiple fictitious names and addresses (Compl. ¶ 18), and regularly moves funds from Amazon to offshore accounts (Compl. ¶ 21). This is plainly *not* true.

| *Plaintiff's False Allegation* | *The Easily-Ascertainable Truth* |
|---|---|
| "Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation." (Compl. ¶ 5.) | CafePress is a well-known, US-based brand that has existed for over twenty years, under the same name, albeit different owners. (Bloxberg Decl., ¶¶ 5-8.) |
| "Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions." (Compl. ¶ 13.) | The owners of the CafePress brand have always resided in the United States and this fact is easily ascertainable by a Google search. (Bloxberg Decl., ¶¶ 5-7.) |
| "Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores. For example, many of Defendants' names and physical addresses used to register their Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants' Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other fictitious names and addresses." (Compl. ¶ 18.) | No owner of the CafePress brand has never concealed its identity. (Bloxberg Decl., ¶ 7.) Publicly available WHOIS information for cafepress.com clearly identifies "PlanetArt," CafePress' parent company, as the owner of the domain name, perfectly consistent with a publicly-available Wikipedia article and other press releases. (Id. at ¶ 8.) |

| | |
|---|---|
| "Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Amazon accounts to offshore bank accounts outside the jurisdiction of this Court." | Though PlanetArt is a global company, its primary banking accounts are in the United States. (Bloxberg Decl., ¶ 14.) |
| "…the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to further amend the Complaint." (Mem. in Support of Plaintiff's Ex Parte Motion, p. 9.) | The CafePress website plainly states its identity. (Bloxberg Decl., ¶ 7.) |

**C.    Plaintiffs did not serve or provide notice of the TRO, Motion for Preliminary Injunction, or Preliminary Injunction, prior to obtaining court orders**

In addition to providing the Court with numerous false statements in their Complaint and injunction motions, Plaintiffs and their counsel *never* provided *any* notice to CafePress or PlanetArt of *anything* relating to this lawsuit prior to obtaining the TRO, Preliminary Injunction Order, and serving the Order on Amazon.com to freeze CafePress' account balance.

Plaintiff obtained its temporary restraining order in early April and asked the Court to convert that TRO to a preliminary injunction in early May. (Dkt. Nos. 20, 21, 30.) The Court noted in its minute order that "[n]o defendant has filed an appearance in this matter or otherwise objected in response to the TRO." (Dkt. No. 30.) It turns out, there is a good reason for that. While CafePress can't speak for the other Defendants, Plaintiff's counsel did not bother serving *any* papers on CafePress – not the Complaint, not the TRO, not the Motion for Preliminary Injunction, and not the preliminary injunction itself. (Bloxberg Decl. ¶¶ 16-17.)

CafePress did not learn of this lawsuit until May 17, 2021, when it received a Bloomberg

7

docket notification. (Bloxberg Decl., ¶ 16.) In the evening of May 18, 2021, CafePress asked Plaintiff's counsel to provide any documents that they had relating to service of papers on CafePress. (May 18th Email, Ex. A.) In response, two days later, Plaintiff's counsel had the Clerk's office issue a single summons for all Defendants, and on May 21st – nearly 7 weeks after the TRO had been entered – Plaintiff's counsel filed a proof of service that states:

> On May 20, 2021, I sent an email containing a copy of the Complaint, TRO and Summons to the email addresses identified in Exhibit 1 to the Declaration of Jose Santiago any [sic] email addresses provided for Defendants by third parties that include a link to a website containing the aforementioned pleadings.

(Dkt. No. 32.) This filing appears to be an admission that Plaintiff's counsel did not serve *any* Defendant in this case with *any* document until May 20, 2021, weeks after a preliminary injunction issued.

Though Plaintiff did not serve CafePress with any papers from this litigation until Plaintiff's counsel asked for documentation of service, Plaintiff apparently *did* serve Amazon with the TRO and/or Preliminary Injunction. CafePress learned on Friday, May 21, 2021 that Amazon is now withholding approximately $547,099 in funds – the entirety of the CafePress Amazon Account. CafePress does not know when Amazon put this freeze in place. CafePress has sold less than $1,000 in emoji-related products in the past thirty days across *all* platforms, including Amazon. Of course, all of these items were officially-licensed JoyPixels items.

**D.     Plaintiff attempted to hide their behavior from the Court by filing a unilateral Rule 41 Dismissal**

Over the past several days, PlanetArt's counsel has attempted to get Plaintiff to answer some very basic questions about its actions. (See Nelson Decl., filed herewith). But Plaintiff has largely refused to answer any questions. Plaintiff refused to provide copies of the sealed documents, including refusing to provide a copy of court orders issued in this case. (Nelson Decl., ¶¶ 2-8.) Plaintiff also refused to provide a copy of its correspondence with Amazon, or

8

any other third parties, relating to this case. (Id. at ¶ 8.) While Plaintiff had no trouble obtaining an illegal preliminary injunction against CafePress and contacting Amazon – and who knows who else – to freeze CafePress' Amazon accounts, Plaintiff and its counsel are *refusing to share that correspondence with* CafePress. (Id.) In fact, Plaintiff and its counsel are so desperate to avoid sharing this obviously-discoverable information that they attempted to dismiss their claims against CafePress unilaterally. (Dkt. No. 34.)

## II.     LEGAL STANDARDS

### A.     There is no legal authority for issuing a preliminary injunction without notice

Rule 65 is crystal clear: "The court may issue a preliminary injunction *only* on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). On this basis alone, the Preliminary Injunction Order should be dissolved against CafePress.

### B.     A Temporary Restraining Order may only issue without notice upon a showing of *specific* facts

Rule 65 is equally clear regarding issuance of a temporary restraining order without notice – the Court may only do so upon a showing of "*specific* facts in an affidavit or a verified complaint." Fed.R.Civ.P. 65(b)(1)(A) (emphasis added). Here, the general allegations submitted by Plaintiff under penalty of perjury are demonstrably false with respect to CafePress.

### C.     The Court may not freeze the assets of a legitimate ongoing business when the alleged counterfeiting is a tiny portion of the overall business

While asset freezes may be common in *real* counterfeiting cases, an asset freeze is still an extreme remedy which has a very limited purpose. A court may *not* freeze assets solely to preserve a plaintiff's right to recover damages. *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999). Asset freezes may *only* be used to ensure the availability of equitable relief, such as an accounting. *Id.; CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1095-96 (7th Cir. 1994).

A court's authority to freeze assets is limited to the amount by which Defendants profited from any alleged wrongdoing. *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005). Plaintiff has the burden of proving that the assets it seeks to freeze are a reasonable approximation of the alleged ill-gotten gains. *Id.* "The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir.1988).

**D.     A party may not unilaterally dismiss individual defendants pursuant to Rule 41**

While the plain language of Rule 41 appears to draw a bright line, some courts have recognized that it is possible for a case to advance far enough that a Court should reject a unilateral Rule 41 dismissal for reasons of equity. *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir. 1953). While "Harvey has been considered, distinguished, and criticized in many subsequent cases," *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 141 (7th Cir. 1978), PlanetArt's counsel has not found a singe case where a Plaintiff *obtained* a preliminary injunction, *effected* that injunction by serving on third parties, without any notice to the Defendant, and *then* attempted to file a unilateral dismissal.  *See also*, *Winterland Concessions Co. v. Smith*, 706 F.2d 793 (7th Cir. 1983).

A plaintiff also may not use Rule 41 to unilaterally dismiss individual parties.  The plain language of Rule 41 discusses dismissing an "action," not parties. "Rule 41(a)(1)(i) does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action' – which is to say, the whole case. *Berthold Types Ltd. v. Adobe Sys.*, 242 F.3d 772, 777 (7th Cir. 2001), *but see Winterland*, 706 F.2d at 766 (approving Rule 41(a) dismissal of some defendants, but only where all other defendants have been dismissed).

10

E.  **The Court can address wrongful seizure, fees and costs regardless of a Rule 41 Dismissal**

Even where a case has been unilaterally dismissed pursuant to Rule 41, the Court still has the authority to address wrongful seizure under Rule 65, and to address attorneys fees and costs. *U.S. DID Corp v. Windstream Communications, Inc.*, 775 F.3d 128 (2nd Cir. 2014.)

III. **ARGUMENT**

A.  **The Court should reject the Rule 41 Dismissal**

The Court should reject Plaintiff's Rule 41 dismissal under its inherent equitable powers because PlanetArt *would* have answered and substantively responded to the TRO and motion for preliminary injunction had Plaintiff ever given PlanetArt notice. While courts have encouraged strict adherence to the "bright line" of Rule 41(a), PlanetArt's counsel has not located any case where a Plaintiff was permitted to dismiss a case after *obtaining* a preliminary injunction *and* effecting that preliminary inunction by freezing the Defendant's assets. Plaintiff's behavior in this case is simply unconscionable, and it should not be able to avoid accountability for its behavior via Rule 41.

The Court should also reject Plaintiff's Rule 41 dismissal because it only attempts to dismiss two defendants; it does not attempt to dismiss the entire action. *Berthold* 242 F.3d at 777 (7th Cir. 2001). It appears that Plaintiff is still trying to move forward with its shakedown scheme against the remaining defendants, while trying to avoid having to explain its actions to the Court.

B.  **The Preliminary Injunction is void for lack of notice**

The Court must vacate the preliminary injunction as to all defendants because Plaintiff – shockingly – did not serve CafePress (or apparently any party) with any papers until May 20, 2021 – after Plaintiff obtained the Preliminary Injunction – and only after counsel for PlanetArt

11

reached out asking for a copy of the papers in this case. There is no evidence in the record or docket that Plaintiff served any party to this case prior to May 20, 2021, and Plaintiff's purported "proof of service" appears to concede that May 20, 2021 was the first date it served *any* party. (Dkt. No. 32.) Plaintiff's prior filings with the Court claim that Plaintiff had frozen some parties' Amazon accounts, but serving Amazon is not the same thing as serving a party. Indeed, as CafePress' experience shows, CafePress did not become aware of its account being "frozen" until just days ago.

CafePress has given Plaintiff's counsel an opportunity to provide evidence of service, and to provide an explanation of its lack of service. (See Exs. A, B and C to Nelson Decl.) Plaintiff's counsel has declined to do so.

**B.     The Preliminary Injunction should be vacated because it was obtained through false pretenses**

Both the Temporary Restraining Order and Preliminary Injunction were obtained through false pretenses, at least with respect to CafePress. Plaintiff's motions focused almost exclusively on the purported foreign nature of the alleged infringers, with a series of conclusory and decidedly non-specific allegations that accused counterfeiters will dissipate assets if given notice of a temporary restraining order.

But none of the elements of either a temporary restraining order or preliminary injunction were ever present with respect to CafePress.

Plaintiff is not likely to succeed on the merits of its claims because CafePress has a license to use the products at issue and because Plaintiff's trademark registrations appear to be generic, descriptive, and invalid. Had CafePress had sufficient notice of a preliminary injunction hearing, it would have appeared to defend itself and could have conducted discovery surrounding Plaintiff's trademark registrations, whether Plaintiff actually used the purported marks in

12

commerce at the time of registration, whether the marks are descriptive, and whether the marks are generic. CafePress is unable to marshal all of its evidence in this motion – having only been aware of this case for a few days – but it should be clear to the Court that there are significant red flags surrounding Plaintiff's marks. Plaintiff's misconduct in this matter also underscore that any claim to injunctive relief is barred by its unclean hands.

Plaintiff's claims of irreparable harm also fall flat as applied to CafePress. CafePress is definitively *not* some shady foreign entity operating fly-by-night websites. It has been in operation for over twenty years and is located in the United States; it even *produces* products in the United States. If Plaintiff's underlying claims *did* have merit, the accused products are a tiny fraction of CafePress' overall business lines, and there is little question that money damages could remedy any harm Plaintiff purportedly suffered (but they do not for the reasons noted above, including the fact that CafePress has a license for the products at issue in this case).

The balance of hardships also favors CafePress. Plaintiff is unfairly attempting to increase the hardship on CafePress by failing to timely provide notice, while simultaneously failing to tell the Court that Plaintiff had not provided notice to CafePress. Plaintiff is also attempting to ratchet up the hardship by demanding a vastly overbroad injunction. Plaintiff did not simply demand that CafePress stop selling a handful of emoji-themed products; it also demanded that Plaintiff gain control of CafePress' domain name (which CafePress has owned for over 20 years), that Amazon, Facebook, LinkedIn, Twitter, and Google (among others) immediately cease providing *all* services to CafePress, and that Amazon restrain CafePress' entire financial accounts, regardless of whether the funds in those accounts had *anything* to do with Emoji-themed products.

CafePress sells *thousands* of products; it has *dozens* of lines of products licensed from

other companies, and its Joy Pixels Gifts line is just *one* of these lines. Plaintiff's attempt to seize *all* of CafePress' funds held at Amazon, the vast majority of which have nothing to do with emojis, demonstrates that this case is little more than a cash-grab by Plaintiffs and their counsel with little regard for the underlying merits.

Further, the fact that CafePress *licenses* its emoji-themed products from JoyPixels underscores why the Court should *not* enjoin the sales of *any* products. Plaintiff is *not* the only potential licensor of emoji-themed products in the world, and CafePress' internet store shows *on its face* that CafePress has carefully and appropriately obtained a license for the products at issue. Enjoining sale of those products not only harms CafePress, but the company which licensed the products to CafePress, JoyPixels. The overbreadth of Plaintiff's draft injunction, coupled with the low likelihood of success and the potential harm to CafePress and its licensor, JoyPixels, demonstrates that the balance of the hardships strongly favors CafePress.

Finally, the public interest strongly counsels against an injunction. Any time a party claiming to "own" a term like "emoji," which is clearly extensively in public use and is descriptive on its face, the Court should exercise extreme caution in enjoining any use of that mark. The public has a strong interest in ensuring that generic and descriptive marks are free for all to use. Plaintiff's misrepresentations to the Court about CafePress and failure to effectuate service (or to advise the Court that it had failed to serve its Complaint or Motion for Preliminary Injunction on CafePress) also suggest that a PI in this case would not serve the public interest. Once again, had Plaintiff provided notice, CafePress would have been able to marshal discovery and evidence to further support this argument, but at this point the obvious potential genericness of the mark should be sufficient to vacate any injunction.

C. **The asset freeze must be vacated**

As set forth above, CafePress is a well-established company, and Plaintiff's generic allegations regarding purported shady foreign entities have no bearing on CafePress. This alone should be sufficient to vacate the asset freeze, but it is worth noting separately that the Court does not have the *authority* to freeze assets that are *not* the proceeds of counterfeiting.

A cursory review of CafePress' website, or its Amazon store, demonstrates that there is a *wide* variety of products there. (See Ex. 6 to Bloxberg Decl.) A Court's authority to freeze assets is limited to *equitable* remedies, such as an accounting. A Court does not have authority to enter a general purpose asset freeze of funds *not* relating to the alleged counterfeiting. *See SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (the proposed asset freeze may extend only to the amount by which Defendants profited from any alleged wrongdoing); *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir.1988) (courts may not freeze a defendant's assets which are unrelated to the underlying litigation). Plaintiff failed to meet its burden, because it has provided no evidence whatsoever that the assets frozen are in any way related to revenues associated with the alleged counterfeiting

In fact, Plaintiff has not shown a *single sale* of a *single* emoji-themed product. Plaintiff has not proven that a *single dollar* in CafePress' Amazon account is related to the alleged counterfeiting. Since the district court is not permitted to freeze a defendant's assets solely to preserve a plaintiff's right to recover damages, the asset freeze in this case is inappropriate. *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999).

Moreover, an asset freeze is an equitable remedy. Any claim to equity from this Court is barred by Plaintiff's misconduct and its unclean hands.

**D.  The Court should order Plaintiff to immediately produce discovery relating to its allegations**

Plaintiff has apparently been operating for 7 weeks under an expedited discovery order,

15

without notice to any Defendant. Had Plaintiff given CafePress adequate notice of a preliminary injunction hearing, CafePress would have had an opportunity to conduct appropriate discovery and prove to the Court why Plaintiff's claims are meritless – and sanctionable. It is time that discovery in earnest commenced. In view of Plaintiff's behavior to date, in addition to vacating the injunction, the Court should direct Plaintiff to immediately produce the following discovery:

- All documents relating to the prosecution of its EMOJI-formative trademarks, including all of its foreign prosecution files.

- All documents which support any of the declarations submitted in support of the TRO and preliminary injunction motions.

- All documents which demonstrate use of its EMOJI-formative marks in commerce in the United States, including documents which demonstrate the date of first use of the mark(s) in connection with *each* good or service listed in *each* of Plaintiff's trademark registrations.

- All documents relating to any challenge to the validity of an EMOJI-formative mark.

- All communications between Plaintiff, or its agents, and third parties (including Amazon), which in any way reference this case or CafePress.

- All licenses of its EMOJI-formative marks.

Further, the Court should direct Plaintiff to make each of its declarants available for deposition, at the offices of CafePress' counsel in Chicago, within the next 14 days, after production of the documents set forth above. This discovery is necessary to assess whether, and to what extent, Plaintiff and/or its counsel should be sanctioned for the false statements submitted to the Court.

E. **The Court should enter an order to show cause by Plaintiff should not pay PlanetArt fees, costs and punitive sanctions**

The Court should enter an order to show cause why Plaintiff should not pay PlanetArt its fees and costs, plus additional punitive sanctions, pursuant to Rule 65, pursuant to 15 U.S.C. § 1117(a), and pursuant to the Court's equitable powers.

Rule 65 creates a cause of action for parties who have been wrongfully enjoined or restrained, though "damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). Here there is no doubt that all of the orders Plaintiff sought, were invalid for false statements, and that the preliminary injunction is additionally invalid for lack of notice, at least as to PlanetArt and CafePress, if not all other defendants. PlanetArt's fees, costs and damages exceed the $10,000 bond – indeed, Plaintiff froze several *hundred* thousands of dollars of CafePress funds, which had *nothing* to do with the alleged "counterfeiting" here. Further, as set forth in the accompanying declarations, Plaintiff's fees incurred in bringing this motion exceed $10,000.

PlanetArt also notes that there is a private cause of action for wrongful seizure in counterfeiting cases under 15 U.S.C. § 1116(d)(11); while the original asset freeze issued under the Court's equitable powers, the case law relating to wrongful seizure under 1116(d)(11) is highly relevant. Of course, because the Court issued the original orders under its equitable powers, its equitable powers are also the remedy for Plaintiff's wrongdoing.

PlanetArt also has a claim for attorneys fees and costs under 15 U.S.C. § 1117(a), which states that the Court may award reasonable attorneys fees in exceptional cases to the prevailing party. There can be no dispute that PlanetArt is the prevailing party, as Plaintiff's attempted Rule 41 dismissal all but proves that Plaintiff and its counsel are running for the hills. This case also easily meets the "exceptional case" standard. The Seventh Circuit has adopted the "more relaxed totality-of-the-circumstances approach…that the Supreme Court announced in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)." *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 385 (7th Cir. 2019). "[A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating

17

position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane*, 572 U.S. at 554. It is clear from the facts we know *so far* that this case is exceptional – Plaintiff has clearly abused legal process to seize companies' assets without any notice to those companies. But the evidence that PlanetArt seeks above will likely give the court additional bases for finding this case exceptional. Accordingly, the most thorough route forward would be to set a show cause hearing date, order all the discovery set forth above be completed by that date, to permit the Court to hear evidence on this issue – and consider whether Plaintiff's false statements are sufficient to dismiss this case as a whole as a sanction.

PlanetArt recognizes, however, that investing additional time and fees invested in preparing for such a hearing may eclipse the time and fees already spent. Accordingly, PlanetArt has submitted its estimate of time and fees incurred to date with this motion, should the Court simply decide to award fees based on the present evidence before the Court. (Nelson Decl., ¶ 11.)

## CONCLUSION

The Court should vacate the preliminary injunction because Plaintiff did not provide notice to any Defendant, including PlanetArt / CafePress, of their motion for preliminary injunction, in violation of Rule 65 of the Federal Rules of Civil Procedure. The Court should further take note of the false statements and conclusory declarations Plaintiff's used to improperly obtain a temporary restraining order and preliminary injunction, and should direct Plaintiff to produce all relevant documents and witnesses within the next 14 days, and set a show cause hearing to permit the Court to determine the extent of appropriate sanctions as to CafePress, and to permit the Court to assess whether further sanctions, such as dismissal of this

entire action, are appropriate. The Court should also direct Plaintiff to immediately advise all relevant third parties that the preliminary injunction has been vacated, and to take immediate steps to restore CafePress' access to all of its funds.

Alternatively, the Court should vacate the preliminary injunction, award CafePress its reasonable fees and costs incurred to date, and order Plaintiff to immediately contact all relevant third parties and inform them the preliminary injunction has been vacated, and to take immediate steps to restore CafePress' access to all of its funds.

Respectfully submitted,

Dated: May 26, 2021

PlanetArt, LLC

BY: /s/ Cameron M. Nelson
Cameron M. Nelson
GREENBERG TRAURIG, LLP
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Tel: 312-456-8400

Ian Ballon (*pro hac vice to be filed*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date set forth below, I electronically filed the foregoing **CAFEPRESS' EMERGENCY MOTION TO VACATE PRELIMINARY INJUNCTION, UNFREEZE ASSETS, AND COMPEL DISCOVERY** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: May 26, 2021                /s/ Cameron M. Nelson