UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMOJI COMPANY GmbH, | ) | |
| | ) | Case No. 21-cv-1739 |
| Plaintiff, | ) | |
| | ) | Judge: Hon. John Robert Blakey |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

**CAFEPRESS' MEMORANDUM IN SUPPORT OF MOTION FOR FEES, COSTS, AND SANCTIONS BASED ON MATERIAL MISREPRESENTATIONS TO THE COURT**

Plaintiff committed five cardinal sins in this case. First, it obtained an *ex parte* TRO and asset freeze – the most powerful weapons in the court's arsenal – by falsely misrepresenting to the Court that CafePress – an American company that manufactures its products in the United States– is located in China and frequently transfers assets out of this country, which is entirely false. Second, it used the TRO to freeze CafePress'[1] assets *without ever serving CafePress*. Third, it obtained a preliminary injunction *without either serving CafePress or providing notice*. Fourth, it ignored the multiple opportunities CafePress gave it to gracefully exit from this case, forcing CafePress to incur substantial fees. Fifth, it sought to conceal its misconduct by unilaterally dismissing CafePress, but only once it learned that CafePress was about to file a motion for sanctions. (Dkt. No. 35.) Plaintiff's misconduct permeates many other cases in this District, as set forth in the accompanying Declaration of Cameron Nelson and the Expert

---

[1] "CafePress," who Plaintiff named as a defendant in this case, is not a legal entity. PlanetArt, LLC is the entity that owns the CafePress brand and assets. Nevertheless, we refer to PlanetArt as "CafePress" in this brief.

Declaration of Professor Eric Goldman.

These cardinal sins have harmed CafePress. Plaintiff froze hundreds of thousands of dollars of CafePress' assets ($547,099) – almost all of which was unrelated to the products at issue – and tarnished CafePress's reputation with Amazon, one of CafePress's most important partners. Plaintiff cast an unjustified cloud of suspicion over CafePress' Amazon account forced CafePress to incur substantial (but not unreasonable) legal fees and expenses in its efforts to undo the damage Plaintiff and its counsel have caused.

CafePress only learned of this action – and the orders entered against it – on May 17, 2021, when it received a Bloomberg docket notification. (Bloxberg Decl. Dkt. No. 35-2.) This alone demonstrates Plaintiff violated Rule 65. Plaintiff paid lip service to serving by email when obtaining its temporary restraining order, but they did not actually do so.

CafePress is the prevailing party in this case, and Plaintiff's material misrepresentations to the Court and violations of Rule 65 must be addressed. Plaintiff attempted to quickly dismiss CafePress from this case *only* when it realized CafePress was going to bring Plaintiff's material misrepresentations and lack of service to the Court's attention. (First Nelson Decl. Dkt. No. 35-1 ¶¶ 2-9.) But the Court should not let Plaintiff or its counsel escape accountability; it should find this is an *exceptional* case under the Lanham Act and award fees and costs, as well sanctions pursuant to Rule 65 and the Court's inherent powers.

I. **THE RELEVANT FACTS**

A. **Plaintiff knew or should have known CafePress is a well-known, US-based company**

CafePress has been a well-established US-based company for over twenty years. (Bloxberg Decl. Dkt. No. 35-2, ¶¶ 4-7.) CafePress empowers individuals and small businesses to operate stores online. CafePress has offices only in the United States and is headquartered in California. (*Id.* at ¶¶ 2-6.) PlanetArt currently has approximately 500 employees and in excess of

2

$400 Million in annual revenue. (*Id.* at ¶ 6.)

Basic background information on CafePress and PlanetArt is easy to locate; this information is contained on the Wikipedia page dedicated to CafePress, in press releases such as those from Bloomberg News, and on social media. (*Id.* at ¶ 7.)

PlanetArt operates the CafePress marketplace where consumers can purchase licensed products or create their own. (Bloxberg Decl. Dkt. No. 35-2, at ¶ 8.) CafePress sells products licensed to it from many brands, including Warner Brothers, Hasbro, Marvel, Peanuts, and JoyPixels. (*Id.* at ¶ 9.) Any member of the public – including Plaintiff – can easily view CafePress' many officially licensed products in an "Officially Licensed" section of the CafePress website. (*Id.*) CafePress' emoji-themed products are licensed from JoyPixels and any user who searches for "emoji" is redirected to the "JoyPixels Gifts" portion of CafePress' website. (*Id.* at ¶ 10.)

CafePress prohibits, deters and punishes intellectual property infringement by users, as detailed in its Terms of Use and policies relating to intellectual property. Any brand owner may follow the link "Report an Alleged Infringement," present at the bottom of every page of CafePress' website. (Bloxberg Decl. at ¶¶ 12-13; *see also* https://www.cafepress.com/p/terms-conditions.) CafePress' Terms of Use also:

- State that users represent and warrant that they own or have a license for content they use;

- Forbid users from using third-party intellectual property without authorization; and

- Provide instructions on how to report an alleged intellectual property violation.

(*Id.*)

Plaintiff made no effort to contact CafePress through any channel before filing this case.

**B.      Plaintiff's case is based entirely on material misrepresentations to the Court**

Plaintiff's Complaint, and its motions seeking injunctions, are just generic cut-and-paste allegations unrelated to the *actual* facts in this case. Judge Shah ordered Plaintiff to stop this:

> Plaintiff's counsel is directed to stop submitting proposed orders that cut and paste from other cases without regard to the specifics of this case. Preliminary equitable relief is extraordinary relief and not to be treated cavalierly just because these cases have become routine.

(Nelson Decl. ¶ 13.) Plaintiff and its counsel have ignored this order.

Plaintiff is in the business of filing lawsuits *en masse* against foreign companies. (Goldman Decl. ¶¶ 17-32.) In this case, Plaintiff copied and pasted allegations from one of the *forty-six* prior cases it has filed against foreign companies, and applied those allegations to CafePress, even though CafePress is a reputable company located in the United States and easily amenable to service of process through ordinary channels.

Plaintiff alleged that CafePress purportedly conceals its identity (Compl. ¶ 4), resides in the People's Republic of China (Compl. ¶ 13), uses multiple fictitious names and addresses (Compl. ¶ 18), and regularly moves funds from Amazon to offshore accounts (Compl. ¶ 21). Each of these facts is plainly, and easily ascertainably, *not* true.

| *Plaintiff's False Allegation* | *The Easily-Ascertainable Truth* |
|---|---|
| "Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation." (Compl. ¶ 4.) | CafePress is a well-known, US-based brand that has existed for over twenty years, under the same name, albeit different owners. (Bloxberg Decl. ¶¶ 5-8.) |
| "Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions." (Compl. ¶ 13.) | The owners of the CafePress brand have always resided in the United States and this fact is easily ascertainable by a Google search. (Bloxberg Decl. ¶¶ 5-7.) |
| "Defendants go to great lengths to conceal | No owner of the CafePress brand has ever |

4

| | |
|---|---|
| their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores. For example, many of Defendants' names and physical addresses used to register their Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants' Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other fictitious names and addresses." (Compl. ¶ 18.) | concealed its identity. (Bloxberg Decl. ¶ 7.) Publicly available WHOIS information for cafepress.com clearly identifies "PlanetArt," CafePress' parent company, as the owner of the domain name, perfectly consistent with a publicly-available Wikipedia article and other press releases. (*Id.* at ¶ 8.) |
| "Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Amazon accounts to offshore bank accounts outside the jurisdiction of this Court." (Compl. ¶ 21.) | Though PlanetArt is a global company, its primary banking accounts are in the United States. (Bloxberg Decl. ¶ 14.) |
| "…the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to further amend the Complaint." (Mem. in Support of Plaintiff's Ex Parte Motion, p. 9.) | The CafePress website plainly states its identity. (Bloxberg Decl. ¶ 7.) |

Plaintiff also omitted key information when seeking its injunctions. Plaintiff attached select screenshots of CafePress' Amazon store to its motions – but neglected to tell the Court that CafePress sells *thousands* of products *other* than those Plaintiff accused of infringement.

5

(CafePress Amazon Store Screenshots, Exhibit A; Bloxberg Decl. Dkt. No. 35-2, ¶¶ 15, 20.) This was material information because Plaintiff sought to freeze the *entirety* of CafePress' Amazon account but knew that account would be comprised almost entirely from funds unrelated to the accused products. And, as set forth below, it's claims against CafePress are meritless.

**C.     Plaintiff's case against CafePress was meritless**

Plaintiff's underlying case against CafePress is also without merit. CafePress licenses its emoji-themed products from JoyPixels. (Bloxberg Decl. Dkt. No. 35-2, at ¶ 8.) This is readily observable on CafePress' website, where the JoyPixels products are found under the "officially licensed" portion of the website. Plaintiff did not tell the Court this – because it would have raised questions about Plaintiff's incredible claim that it exclusively owns the word "emoji."

Plaintiff does *not* own the word "emoji." "A generic or common descriptive term can never function as a trademark." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir. 1986). The first emoji were created in the 1990's. *See, e.g., Pardes, Arielle, The WIRED Guide to Emoji,* February 1, 2018 (located at wired.com/story/guide-emoji/) (explaining history of emoji).) Emoji are also part of the Unicode technical standard. *See, e.g., Davis, Mark and Edberg, Peter, Unicode Technical Standard #51, September 18, 2020 (located at Unicode.org/reports/tr51/)* (detailing history of emoji proposals going back to April, 2000). Notably, whenever the international Unicode technical standard uses the term "emoji," it uses the term descriptively to describe a class of characters, and it *never* uses the term to reference Plaintiff. "A generic term is one that is commonly used as the name of a kind of goods." *Liquid Controls*, 802 F.2d at 936. The defendants in this matter, including CafePress, are simply using the term "emoji" to *describe* their products, not to reference Plaintiff. (Reiter Decl. Dkt. Nos. 9-15; Declaration of Eric Goldman, ¶¶ 29-31.)

Plaintiff's allegations that CafePress is selling "counterfeit" products is also meritless.

6

Plaintiff has never presented *any* evidence that it is using its purported trademark in commerce in the United States on the *same* goods as those it accuses of infringement – a statutory requirement of calling something a "counterfeit." *See* 15 U.S.C. § 1116(d)(1)(B)(i). Notably, CafePress asked for discovery on this point, but since Plaintiff refused to provide any (Dkt. Nos. 45, 57, 63 and 67), the Court can only conclude that no such evidence exists.

### D. Plaintiff did not serve CafePress with the TRO, Motion for Preliminary Injunction, or Preliminary Injunction

Plaintiff never provided *any* notice to CafePress or PlanetArt of *anything* relating to this lawsuit. Plaintiff obtained its TRO in early April and obtained a preliminary injunction on May 6. (Dkt. Nos. 21, 31.) CafePress learned of this lawsuit on May 17, weeks *after* the preliminary injunction issued – and CafePress didn't learn of this lawsuit from Plaintiff. (Bloxberg Decl. Dkt. No. 35-2, at ¶ 16.) CafePress only learned of the injunctions when its counsel looked up this case on PACER *six weeks* after the TRO issued.

*After* CafePress learned of the lawsuit on May 17 and demanded Plaintiff produce all documents relating to service, Plaintiff's counsel obtained a summons and filed a proof of service which states:

> On May 20, 2021, I sent an email containing a copy of the Complaint, TRO and Summons to the email addresses identified in Exhibit 1 to the Declaration of Jose Santiago any [sic] email addresses provided for Defendants by third parties that include a link to a website containing the aforementioned pleadings.

(Dkt. No. 32.) This filing – coupled with Plaintiff's counsel's refusal to produce any other evidence of service – is an admission that Plaintiff's counsel apparently did not serve *any* Defendant in this case with *any* document until May 20, 2021, weeks after a preliminary injunction issued.

Of course, Plaintiff and its counsel *did* serve Amazon with the TRO and/or Preliminary Injunction, which caused Amazon to withhold approximately $547,099 of CafePress' funds.

(Bloxberg Decl. Dkt. No. 35-2, ¶¶ 15, 20.)

Not serving defendants appears to be Plaintiff's deliberate routine. (See generally Nelson Decl. and supporting exhibits.) Plaintiff provides notice to defendants of its preliminary injunction motions only when ordered to do so, or when a Defendant has caught wind of the case and raised an objection. (*Id.*) Of the forty-eight cases Plaintiff has filed Plaintiff did not give defendants notice of its preliminary injunction motions in twenty-four of them. (*Id.*)

## II.   LEGAL STANDARDS

### A.   There is no legal authority for issuing a preliminary injunction without notice

Rule 65 is crystal clear: "The court may issue a preliminary injunction *only* on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). Accordingly, the preliminary injunction was void as to CafePress, and as to all of the other parties Plaintiff did not give notice to.

### B.   Temporary Restraining Orders require *specific* facts and prompt service

Rule 65 is equally clear regarding issuance of a temporary restraining order without notice – the Court may only do so upon a showing of "*specific* facts in an affidavit or a verified complaint." Fed.R.Civ.P. 65(b)(1)(A) (emphasis added). Here, the general allegations submitted by Plaintiff under penalty of perjury are demonstrably false with respect to CafePress.

While Rule 65 does not explicitly set forth a time limit for serving a TRO on a defendant, that time limit is implied by the 14-day expiration that is contained within the rule, and by the requirement that a preliminary injunction can only be obtained with notice to the adverse party. Fed.R.Civ.P. 65(b)(2).

### C.   The Court may not issue a general asset freeze

A court's authority to freeze assets is limited to the scope of the alleged wrongdoing. *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005). "[A] court may not reach a defendant's assets unrelated to the underlying litigation." *In re Fredeman Litig.*, 843 F.2d 821,

8

824 (5th Cir.1988); *see also Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999), *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1095-96 (7th Cir. 1994).

D. **The Court can address wrongful seizure, fees and costs regardless of a Rule 41 Dismissal**

When a case has been unilaterally dismissed pursuant to Rule 41, the Court still has the authority to address wrongful seizure under Rule 65, attorneys' fees and costs. *U.S. DID Corp v. Windstream Communications, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014).

III. <u>**ARGUMENT FOR A FEE AWARD AND SANCTIONS**</u>

A. **The Court should sanction Plaintiff for failing to provide notice of its motion for Preliminary Injunction**

The preliminary injunction was void *ab initio* because Plaintiff – shockingly – did not serve CafePress with its motion for preliminary injunction. (Bloxberg Decl. Dkt. No 35-2; First Nelson Decl. Dkt. No. 35-1.) Plaintiff's "proof of service" concedes that May 20, 2021 was the first date it served *any* party. (Dkt. No. 32.) Plaintiff's prior filings claim that Plaintiff had frozen some parties' Amazon accounts, but serving Amazon is not the same thing as serving a defendant. Indeed, as CafePress' experience shows, CafePress did not become aware that its Amazon account was frozen until May 21–more than a month after the TRO issued.

Rule 65 does not authorize *any* preliminary injunction to issue without notice – period. Rule 65 creates a cause of action for parties who have been wrongfully enjoined or restrained, though "damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). PlanetArt's fees, costs and damages exceed the $10,000 bond – indeed, Plaintiff froze *several hundred thousand* dollars of CafePress funds.

Incredibly, it appears Plaintiff and its counsel have structured their entire "trolling"

9

operation with the specific intent of circumventing Rule 65's notice requirement. Of the 48 cases field by Plaintiff in this District, Plaintiff did not obtain a summons until *after* the preliminary injunction issued in *twenty-four* of them. (Nelson Decl. ¶ 10.) Because Plaintiff is targeting at least two hundred defendants per case (Goldman Decl. ¶ 20), that means Plaintiff appears to have obtained invalid preliminary injunctions against approximately *4,800 defendants*.

These are not mere oversights. Judge Gottschall put Plaintiff on notice in the second of 48 cases it filed in this Court that it must timely serve these documents. (Nelson Decl. ¶ 9.) Yet, Plaintiff *still* apparently does not do so as a general rule. (*Id.* ¶¶ 5, 9.) Other judges in this district have explicitly refused to enter preliminary injunctions from this Plaintiff for failing to effectuate service. (*Id.* ¶¶ 12-13, 16, 18.)

Plaintiff's failure to provide notice is deliberate. A party who has notice is likely to challenge Plaintiff's obviously-invalid trademarks. (Goldman Decl. ¶¶ 28-32.) Freezing a defendant's entire Amazon account place significant pressure on the defendants. (*Id.* ¶ 25.) Plaintiff leverages this pressure by extorting small settlement payments from thousands and thousands of defendants. (*Id.* ¶¶ 25-27.) Plaintiff need only obtain $500 from each of its 10,000 defendants, to net $5 Million. Of course, it is entirely possible that Plaintiff has extorted much more than this by not giving defendants notice of the proceedings.

**B.      The Court should sanction Plaintiff for obtaining injunctions based on material misrepresentations and omissions**

Plaintiff obtained temporary restraining and preliminary injunction orders by making material misrepresentations to this Court. Plaintiff's allegation that CafePress is a foreign entity is false. CafePress is a well-known U.S. company that has been in operation for over twenty years; it even *produces* products in the United States. (Bloxberg Decl. Dkt. No 35-2.) But Plaintiff copied-and-pasted generic (and, here, baseless) allegations that CafePress conceals its

10

identity (Compl. ¶ 4), resides in the People's Republic of China (Compl. ¶ 13), uses multiple fictitious names and addresses (Compl. ¶ 18), and regularly moves funds from Amazon to offshore accounts (Compl. ¶ 21). These allegations are simply, unequivocally false with respect to CafePress, and Plaintiff and its counsel knew or should have known they were false, because a simple Internet search would have demonstrated them to be untrue. (*See* Bloxberg Decl. Dkt. No. 35-2.) But for these material misrepresentations, no temporary restraining order or preliminary injunction could have issued against CafePress.

Plaintiff also knew that any funds in CafePress' Amazon account would relate to *hundreds* of items which have *nothing to do* with the asserted Emoji marks. (CafePress Amazon Store Screenshots, Exhibit A.) CafePress' Amazon store features face masks, home office items, apparel, accessories, drinkware and home goods. (*Id.*) It includes items from many licensed brands, including Peanuts®, Star Trek®, Bob's Burgers®, NCIS®, Marvel®, Grey's Anatomy®, Community®, I Love Lucy®, Gilmore Girls®, The Golden Girls®, Avengers Infinity War®, Black Panther®, Ant-Man®, Breaking Bad®, Footloose®, Grease®, Mean Girls®, General Hospital® and American Horror Story®. (*Id.*) Plaintiff *must* be aware of this because it would have to go through *hundreds* of these non-emoji-themed items before finding the handful of items it accused of infringement. Plaintiff did not tell the Court the vast majority of CafePress' Amazon account would be funds for goods which have nothing to do with this case. This was a material omission, and the Court issued a general asset freeze of CafePress' entire Amazon account as a result, beyond the scope permitted by law. Sanctions are therefore necessary to remedy the harm caused to CafePress as the Court would not have frozen

CafePress' account had it known what Plaintiff knew.[2]

Plaintiff's material misrepresentations and omissions are not accidental. Judge Shah previously ordered Plaintiff not to cut and paste allegations against hundreds of defendants. (Nelson Decl. ¶ 13.) Other judges have questioned the appropriateness of joining hundreds of defendants under the same allegations. (*Id.* ¶ 14.) Plaintiff has explicitly disregarded these orders, because obeying them would give parties an opportunity to question Plaintiff's obviously invalid trademarks. (Goldman Decl. ¶¶ 15-33.)

**C.    The Court should sanction Plaintiff for filing a case that is meritless**

This is *not* a case where Plaintiff has genuine rights and merely bungled service of process in an isolated instance of innocent negligence. Plaintiff's purported trademarks rights are a farce – which why Plaintiff seems to prefer suing foreign companies and seems not to effectuate service as a matter of course. (Goldman Decl. ¶¶ 23-33.)

"Emoji" is a generic term, as demonstrated by the Unicode standard set forth above, and as demonstrated by the descriptive way in which the defendants in this case have used it. (Goldman Decl. ¶¶ 31-32.) Had Plaintiff timely served CafePress, CafePress would have promptly demonstrated the generic nature of Plaintiff's trademarks. CafePress would have been able to marshal evidence, including consumer surveys demonstrating that consumers do *not* associate the word "emoji" with Plaintiff.

Had Plaintiff provided CafePress with notice, CafePress would have also pointed out that there is no evidence in the record that Plaintiff or its licensees are selling the *same* goods in US commerce as those offered by Defendants. This is a *statutory requirement* of using the term

---

[2] CafePress does not concede that that freezing *any* portion of its Amazon account was ever appropriate, because Plaintiff does *not* own the term "emoji."

"counterfeit." 15 U.S.C. § 1116(d)(1)(B)(i). Plaintiff utterly failed in its proof on this point.

CafePress would have also demonstrated that it has a license for the products Plaintiff has sued over – a license Plaintiff knew or should have known about, which undermines the entire premise of Plaintiff's case. After all, if Plaintiff truly owns the word "emoji," how did CafePress obtain a license from JoyPixels? Wouldn't Plaintiff have to prove that JoyPixels' rights are invalid? Plaintiff filed its Rule 41 dismissal to avoid these kinds of questions.

Because Plaintiff has now dismissed this case with prejudice via Rule 41, *it can no longer contest CafePress' position on these issues*. Plaintiff, in its haste to avoid defending its case on the merits, has unilaterally declared CafePress the winner of this case *on the merits*.

**D.     The Court should find this case exceptional and award fees and costs**

Pursuant to 15 U.S.C. § 1117(a), CafePress is the prevailing party in this matter. *Zila Swabs Techs. v. Van Dyke*, No. 01 C 8729, 2003 WL 1745901, at *2 (N.D. Ill. Apr. 1, 2003) (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076-77 (7th Cir. 1987)). Because this case is clearly exceptional, the Court should award CafePress its fees and costs.

The Seventh Circuit has adopted the "more relaxed totality-of-the-circumstances approach…that the Supreme Court announced in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)." *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 385 (7th Cir. 2019). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane*, 572 U.S. at 554.

This case is exceptional because of the weakness of Plaintiff's case, its reliance on

material misrepresentations to the Court, and its failure to effectuate service before obtaining a TRO and Preliminary Injunction and seizing CafePress's unrelated proceeds from its Amazon.com account. Plaintiff's misconduct was not the result of error – and indeed Judges Gotschall, Kness, Shah, Lee, Tharpe and Seeger had all previously admonished Plaintiff. (See Nelson Decl. ¶¶ 9, 12-16, 18.) Notwithstanding these warnings, Plaintiff has evaded sanctions so far by quickly dismissing claims when challenged, as it did in this case.[3]

As set forth in the accompanying declaration of Professor Eric Goldman, intellectual property trolling works because the cost of objecting usually exceeds the cost of settling. Plaintiff and its counsel appear to have sued approximately 10,000 parties[4] – and if they demand just $500 per settlement, then that is $5,000,000 in Plaintiff's and its counsel's pockets. (Goldman Decl. ¶ 20.) Few parties are ever going to invest in challenging Plaintiff's obviously-invalid trademark when they can settle for $500 – particularly when their entire Amazon account is frozen. (*Id.* ¶¶ 20, 25, 27.) Plaintiff's misconduct should be allowed to continue unaddressed.

## CONCLUSION

The Court should order Plaintiff to pay the entirety of the bond to CafePress, as the bond is less than CafePress' attorneys' fees and far less than the amount of money Plaintiff illegally froze. The Court should further order Plaintiff to pay CafePress the entirety of its costs and fees incurred in this matter, as this case is plainly "exceptional" under the Lanham Act. Finally, the

---

[3] Notably, Judge Gottschall ruled that Plaintiff's habit of dismissing individual defendants via Rule 41 is improper, citing *Taylor v. Brown*, 787 F.2d 851, 857 (7th Cir. 2015). (Nelson Decl. ¶ 9.) CafePress objected to Plaintiff's Rule 41 dismissal in this case. While this Court overruled CafePress' objections, CafePress urges the Court to reconsider its position in view of *Taylor* and Judge Gottschall's ruling.

[4] The exact number is unknown because in every case plaintiff has filed the list of defendants under seal. As set forth in the Goldman Declaration, there have been at least 7,000 defendants sued in this Court and based on the average number sued in those cases where the names of defendants eventually have been unmasked, at least 10,000 defendants have been sued if the averages hold for those cases where the defense lists remain under seal. (Goldman Decl. ¶ 20.)

Court should consider whether additional sanctions are appropriate, under the Court's inherent powers, in view of the material misrepresentations Plaintiff made in securing an asset freeze order, TRO and Preliminary Injunction against CafePress and other defendants.

DATED: August 16, 2021

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ Cameron M. Nelson
Cameron M. Nelson
GREENBERG TRAURIG, LLP
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Tel: 312-456-8400
nelsonc@gtlaw.com

Ian C. Ballon (admitted *pro hac vice)*
GREENBERG TRAURIG , LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700

*Attorneys for PlanetArt, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing **CAFEPRESS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR FEES, COSTS, AND SANCTIONS BASED ON MATERIAL MISREPRESENTATIONS TO THE COURT** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: August 16, 2021                         /s/ Cameron M. Nelson
                                               CAMERON M. NELSON