IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 21-cv-1739<br><br>Judge John Robert Blakey |

**PLAINTIFF'S RESPONSE TO DEFENDANT NO. 28 "CAFEPRESS" MOTION FOR FEES, COSTS AND SANCTIONS**

Plaintiff, EMOJI COMPANY GmbH ("Plaintiff"), responds to the Motion for Fees, Costs and Sanctions of Defendant No. 28 "CafePress" [Dkt. No. 45] as set forth below.

I.    INTRODUCTION

Defendant No. 28 "CafePress" ("Defendant") makes multiple unsubstantiated allegations against Plaintiff in its Motion for Fees, Costs and Sanctions ("Motion") that are untrue.

To begin with, the present case is a legitimate case and is not a "scam," as alleged by Defendant. Moreover, as the registered owner of its EMOJI trademarks, Plaintiff is entitled to enforce its legitimate intellectual property rights. In addition, Plaintiff continuously uses its registered EMOJI trademarks in commerce and the EMOJI Trademark is not a "*Unicode standard* available for everyone to use," as suggested in Defendant's Motion.

EMOJI owns about 1,000 trademark registrations and applications worldwide for the EMOJI mark (the "EMOJI Trademark"), as a word mark and in conjunction with other words or design elements. *See* https://www.emoji.com. The mark has been examined hundreds of

times by relevant Trademark Offices worldwide; and, in each country, the EMOJI Trademark has been found to be distinctive and registrable.

Plaintiff has been licensing its EMOJI Trademark through an international network of agents and dealers in the U.S. and more than 130 other countries for years. Plaintiff's network of companies that have entered into license agreements with Plaintiff to use the EMOJI Trademark include Sony Pictures Animation Inc. ("SPA") ("The Emoji Movie"), Walmart, Costco, Nestle, Pepsico, Burger King, Nikon, Fuji, Random House, Aldi, Ferrero, Unilever, Zara, Danone, Chevrolet, The Hershey Company, and Kellogg's, among others.

The EMOJI Trademark has been successfully enforced in numerous court proceedings. Plaintiff has filed trademark infringement/counterfeiting cases in the Northern District of Illinois to enforce the EMOJI Trademark.

In short, registration of the EMOJI Trademark in the United States constitutes prima facie evidence that the EMOJI mark is valid and enforceable. Plaintiff has licensed use of the EMOJI mark with a broad network of companies worldwide. Moreover, Plaintiff is actively enforcing its rights in the EMOJI Trademark against counterfeiters in the Northern District of Illinois. As such, Defendant's Motion is without merit and should be denied.

II. PROCEDURAL HISTORY

On March 31, 2021, Plaintiff filed its Complaint for trademark infringement and counterfeiting, false designation of origin and violation of the Illinois Uniform Deceptive Trade Practices Act. [Dkt. No. 1]. Also on March 31, 2021, Plaintiff filed an *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), requesting an asset restraint and expedited discovery along with a supporting Memorandum and declarations. [Dkt. Nos. 8 and 9]. On April 9, 2021, this Court granted Plaintiff's Motion for Entry of a TRO including the requested asset restraint and expedited discovery. [Dkt. No. 20]. On April 12, 2021, Plaintiff served a

summons and a copy of the TRO on the relevant e-commerce platforms in this matter, Amazon.com, Inc. ("Amazon") and Joom. On April 19, 2021, Plaintiff filed a Motion to Extend the TRO because Plaintiff had not yet received the requested account information from the platforms. [Dkt. No. 24]. On April 22, 2021, the Court extended the provisions of the TRO for an additional fourteen (14) days. [Dkt. No. 26]. On May 6, 2021, the Court granted Plaintiff's Motion for Entry of a Preliminary Injunction. [Dkt. No. 30]. Upon receiving the account information from all of the platforms, Plaintiff served the defendants with a Summons, the Complaint, the TRO and the Preliminary Injunction Order on May 20, 2021. [Dkt. No. 32].

On May 23, 2021, counsel for Defendant filed an appearance. [Dkt. No. 33]. On May 24, 2021, Plaintiff dismissed Defendant with prejudice from this matter. [Dkt. No. 34].

Defendant filed an Emergency Motion to Vacate the Preliminary Injunction, Unfreeze the Assets and Compel Discovery on May 26, 2021. [Dkt. No. 35]. The Court denied Defendant's Motion to Vacate the Preliminary Injunction, Unfreeze the Assets and Compel Discovery as moot because Defendant had been previously dismissed from this matter and ordered the parties to confer and file a status report to outline any remaining issues. [Dkt. No. 38]. On June 15, 2021, Plaintiff filed a status report [Dkt. No. 43] and Defendant filed a separate status report [Dkt. No. 44].

On June 15, 2021, Defendant filed a second Motion to Compel Discovery. [Dkt. No. 45]. The Court set a briefing schedule on Defendant's Motion to Compel Discovery. [Dkt. No. 47]. On July 22, 2021, after considering the memoranda submitted, the Court denied Defendant's second Motion to Compel Discovery. [Dkt. No. 67].

On August 16, 2021, Defendant filed the pending Motion for Attorney Fees, Costs and Sanctions including a supporting memorandum and declarations. [Dkt. Nos. 78, 79, 80 and 81].

III. ARGUMENT

a. <u>Defendant's Motion is Procedurally Improper</u>

The present Motion is Defendant's third bite at the apple. Defendant requested fees and costs in its two previous motions [Dkt. No. 35 and 45], both of which were denied. While not styled as such, the present Motion should be denied because it is essentially a Motion to Reconsider matters which have already been ruled upon.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been considered during the pendency of the previous motion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996) "Disposition of a motion for reconsideration is left to the discretion of the district court, and its ruling will not be reversed absent an abuse of that discretion." *Id.*

In the present case, this Court has already determined that Defendant's request for sanctions was not warranted. [Dkt. No. 67]. Defendant's Motion raises the same issues argued in its prior two motions and fails to present any newly discovered evidence. As such, and without presenting any manifest errors in the Court's prior rulings, Defendant's Motion should be denied.

b. <u>Defendant's Requested Fees All Occurred After Being Dismissed</u>

Even assuming arguendo that Defendant's Motion is procedurally proper, all of Defendant's efforts to continue litigating this matter occurred ***post dismissal***. In addition, Defendant's request for fees and costs should be denied because Defendant has failed to provide the Court with a list of alleged fees and costs.

Defendant "CafePress learned of this lawsuit on May 17…" (Defendant's Motion, pg. 7). Defendant filed an appearance on May 23, 2021. [Dkt. No. 33]. Defendant was dismissed from this matter the next day on May 24, 2021. [Dkt. No. 34]. After being dismissed from this matter,

4

Defendant filed three motions and a status report. [Dkt. Nos. 35, 44, 45, 78 and 79]. Defendant's requests for fees and costs ring hollow considering all of Defendant's efforts in this matter occurred after its dismissal from the case.

Additionally, Defendant has failed to provide any breakdown of the fees and costs it requests. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1980).

In the absence of any such documentation and in view of the fact that all of Defendant's fees and costs occurred *after* Defendant was dismissed from this matter, the present Motion should be denied.

    c.   <u>The Merits of Plaintiff's Case are Well-Founded</u>

The claims presented in Plaintiff's Complaint are well-founded. EMOJI COMPANY GmbH is a well-established growing company with a significant intellectual property portfolio. EMOJI COMPANY GmbH is a global brand with developed markets in North America, Europe, Brazil, Mexico, China and Australia and has been rapidly expanding in Southeast Asia. (Declaration of Marco Huesges, at ¶ 3).

EMOJI COMPANY GmbH currently owns about 1,000 trademark registrations and applications in over 100 countries, including the United States for the EMOJI trademark (the "EMOJI mark"), as both a word mark and in conjunction with other words or design elements for more than 30 categories of goods and services. (*Id.* at ¶ 4). Plaintiff is the registered owner of U.S. Registration Nos. 4,766,492; 4,893,876; 4,595,110; 5,202,078; 4,868,832 and 5,073,890 for the EMOJI mark and Registration Nos. 5,225,956 and 5,127,348 for "the Emojis" mark.

EMOJI's trademarks are registered on the Principal Register and, under Section 7(b) of the Lanham Act. (*Id.* at ¶ 5). Those registrations constitute prima facie evidence of: (a) the

validity of the registered mark and of the registration, (b) Plaintiff's ownership of the mark and (c) Plaintiff's exclusive right to use the mark in commerce with regard to the goods concerned. (*Id.* at ¶ 5).

Plaintiff has developed a vast library of protected emoji® brand icons and designs. (*Id.* at ¶ 4). Plaintiff licenses its marks to third parties pursuant to formal license agreements, through international license agencies and more than 1,000 licensees. (*Id.* at ¶ 6). Plaintiff has been licensing its EMOJI Trademark through an international network of agents and dealers in the U.S. and more than 100 other countries since at least 2015. (*Id.* at ¶ 6). Plaintiff has licensing agreements with numerous companies including Sony Pictures Animation Inc. ("SPA") ("The Emoji Movie"), Walmart, Costco, Nestle, Pepsico, Burger King, Nikon, Fuji, Random House, Aldi, Ferrero, Unilever, Zara, Danone, Chevrolet, The Hershey Company, Puma and Kellogg's, among others, have entered into license agreements with Plaintiff concerning use of the EMOJI Trademark. (*Id.* at ¶ 6). This network of licensed users has resulted in retail sales of EMOJI branded products exceeding $800 million annually and more than $2.5 billion total from license revenue from sales of EMOJI-branded products. (*Id.* at ¶ 6).

Plaintiff also has licensing partnerships concerning use of its EMOJI mark with leading firms including ACCO Brands (calendars), Alcove Brands (health and vitamins), ASO (first aid products), Bendon (publishing), Bentex Group (children's apparel) Centric Brands (sleepwear), DanDee International (seasonal and non-seasonal toys, collectibles, home décor, pet and baby products), David's Textiles (fabric), Decopac (cake decorating), Fabpops (mobile phone accessories), Gotta Love It (apparel), Handcraft Manufacturing Corp. (children´s clothing ), Isaac Morris, LTD (apparel); Jay Franco (domestic products), Paramount Brands (fragrances), RedBubble (fan art/e-commerce); Running Press (publishing), Strikeforce Bowling (bowling),

Success Promotions (promotional products and emoji "Attitude" bobble.), Trends International, LLC (posters and stickers), Unique (partyware), Unitrex SpaRoom (automotive air fresheners), World Tech Toys (toys) and ZAK! Design (dinnerware, drinkware and food storage). (*Id.* at ¶ 7).

Plaintiff was ranked No. 57 out of the top 150 global licensors in the trade journal *License Global* and was ranked No. 3 of the most influential brands by the 2017 *Power List* on licensing.biz behind Lego® and Coca-Cola®. (*Id.* at ¶ 9). Plaintiff has received numerous awards and accolades for its licensing of the EMOJI mark and in 2018, received the Lima Award for Best Digital Program in the United States. (*Id.* at ¶ 10). Plaintiff was also nominated for Best Brand digital property 2019 (Licensing International) and for the Lima Award for Best Digital Property in the United States in 2018. (*Id.* at ¶ 10).

Plaintiff has invested millions into brand building, content creation and brand protection. (*Id.* at ¶ 11). Plaintiff displays the EMOJI marks extensively on its products and in its marketing and promotional efforts which include, but are not limited to, substantial print media, a website, social media sites and point of sale materials. (*Id.* at ¶ 11). Plaintiff has Emoji® mono-brand apparel stores in China including the official Emoji® brand store on TMall, which is a Chinese language website with over 500 million monthly active users for business-to-consumer online retail sales and developing brand awareness. (*Id.* at ¶ 8). Plaintiff also has Emoji® brand tea cafes in China, which introduce Chinese consumers to the Emoji® brand. (*Id.* at ¶ 8).

When Plaintiff identifies verifiable infringement, it takes action against such companies, and is in constant contact with its retail and licensing partners and agents to share information about infringing parties and/or products. (*Id.* at ¶ 12). Plaintiff has implemented an anti-counterfeiting program and investigates suspicious websites and online marketplace

listings identified through external vendors in proactive Internet sweeps where it frequently discovers many unauthorized sellers of EMOJI-branded products. (*Id.* at ¶ 12). As a result of the unauthorized sales of EMOJI-branded products, Plaintiff closely monitors the sales of its products in both physical retail stores and on online platforms such as Amazon.com, eBay, DHgate, Wish and Aliexpress. (*Id.* at ¶ 13). These unauthorized sales cause a deterioration of the goodwill and brand image of the EMOJI mark through the loss of control over Plaintiff's ability to enforce quality standards on its products. (*Id.* at ¶ 12).

The EMOJI Trademark has been successfully enforced in numerous court proceedings. Plaintiff has filed numerous trademark infringement/counterfeiting cases in the Northern District of Illinois to enforce the EMOJI Trademark. (*Id.* at ¶ 14). Plaintiff also obtained a European Union preliminary injunction during 2018 against EmojiOne (now JoyPixels) concerning use of the designation EmojiOne and/or Emoji One. (*Id.* at ¶ 14 and Exhibit 1).

As a result, Defendant's claims regarding the legitimacy of Plaintiff's efforts to protect its EMOJI brand and intellectual property are unfounded.

    d. <u>Neither CaféPress nor JoyPixels have a Valid License to Market and Sell EMOJI-Branded Products</u>

Defendant's claims that they have a valid license to market and sell EMOJI-branded products through their alleged agreement with JoyPixels are unfounded and simply not true. Plaintiff licenses its products to a select group of companies based upon agreed standards for production and quality, and Plaintiff closely monitors the efforts of its licensees. (Declaration of Marco Huesges, ¶ 15). Defendant CaféPress has, without permission, willfully and with the intention of benefiting from the reputation and goodwill in the EMOJI mark, offered for sale goods using the EMOJI mark. (*Id.* at ¶ 16). As a result, Defendant has created a substantial likelihood of confusion on the part of the public and consumers regarding the source of the

EMOJI marks. (*Id.* at ¶ 16). Furthermore, EMOJI has no license agreement or other relationship with Defendant to use the EMOJI mark or for any other purpose. (*Id.* at ¶ 17). Additionally, a search of EMOJI's licensing records failed to produce a licensing agreement with JoyPixels, because none exists. (*Id.* at ¶ 19).

JoyPixels is not an authorized seller of EMOJI products and Plaintiff would not grant such a license to JoyPixels. (*Id.* at ¶ 19). EMOJI COMPANY GmbH is very selective with regard to whom they license because those licensing partners are required to manufacture the products to meet EMOJI's specifications and standards. (*Id.* at ¶ 19).

e. <u>Issues Related to Those Raised in this Case have Already Been Adjudicated</u>

Café Press claims that "Café Press emoji - themed products are licensed from JoyPixels."  (Memorandum, p. 3 [Dkt. No. 79]).  However, a European Union Court in Hamburg, Germany determined during 2018 that EmojiOne Incorporated (now JoyPixels) infringed Plaintiff's Emoji trademarks and entered a preliminary injunction. As a result, EmojiOne Incorporated aka JoyPixels is prevented from "advertising, offering and/or placing on the market clothing, footwear or headwear in the European Union under the designation EMOJI ONE and/or EMOJIONE in commercial transactions, or have third parties carry out these activities, in particular licensees".  A copy of the Court's order is attached as Exhibit 1 to the Huesges declaration.  Plaintiff has not, and would not, license use of the EMOJI mark to JoyPixels.  (*Id.* at ¶ 19).

f. <u>Defendant Has Infringed and Continues to Infringe Plaintiff's EMOJI mark</u>

Defendant has infringed Plaintiff's EMOJI mark and continues to infringe its intellectual property. Attached as Exhibit A is a copy of several infringing products that have been being marketed by Defendant without Plaintiff's permission. (*See* Exhibit A - Evidence of Infringement - EMOJI). Defendant listed women's underwear, an infant onesie and a toddler's

9

t-shirt for sale using the EMOJI mark. Plaintiff never consented to Defendant's use its Emoji mark in connection with those products or any other products. Upon a further review of the list of JoyPixels products, Plaintiff uncovered numerous additional infringing products for which JoyPixels (in conjunction with Defendant) is using the EMOJI mark without Plaintiff's permission. (*Id.* at ¶ 18).

The conduct and infringing use by Defendant and others constitutes trademark infringement in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)) and §32 of the Lanham Act (15 U.S.C. §1114), which prohibits the use in commerce in connection with the sale of goods or the rendering of any services of any word, name, symbol or device, or any combination thereof, that is likely to cause confusion, or to cause mistake, or to deceive as to the source of the goods or services. As a direct and proximate result of the intentional, willful and wanton conduct and infringing use of Defendant and others, Plaintiff has been injured and will continue to suffer damages including irreparable harm and injury to its business, reputation and goodwill unless Defendant and others are restrained from infringing the EMOJI mark, including without limitation being restrained from engaging in infringing uses.

The actionable misconduct of Defendant an others is intended to and/or is likely to cause confusion, misrepresentation, mistake and/or deceive the public and customers as to the affiliation, approval, sponsorship or connection between EMOJI COMPANY GmbH and Defendant. As such, Defendant's claims that they were not infringing Plaintiff's EMOJI marks are untrue and Defendant's Motion should be denied.

g. Defendant's Claims of Damages are Exaggerated

Defendant claims that as a result of the TRO, Amazon froze $547,099 of Defendant's assets. The records provided to Plaintiff by Defendant's e-commerce platform provider, Amazon.com, Inc. ("Amazon"), indicate that only $50,157.90 in total assets was frozen, and

that the hold was lifted by Amazon on May 27, 2021.

| Doe | Seller Name | Seller Origin | Platform | Email | Account USD | Amount Frozen USD | Notes |
|---|---|---|---|---|---|---|---|
| 28 | CafePress | China | Amazon | amazonadminus@cafepress.com | A23DCMMMPYGKY | $ 50,157.90 | |
| 28 | CafePress | | Amazon | amazonadminhm@cafepress.com | A2B0JW5557BJC4 | $ - | Related to doe no 28, seller name CafePress, Inc. |
| 28 | CafePress | | Amazon | amazonadminca@cafepress.com | AVKE1HATD74LP | $ - | Related to doe no 28, seller name PlanetArt, LLC |

In addition, information provided to Plaintiff's investigator indicated that Defendant's business was located in China. As shown above from the information provided pursuant to Plaintiff's subpoena to Amazon, Defendant operates multiple accounts with the same name that only differ by account numbers, which is a common practice among many counterfeiters.

Therefore, given the information available to Plaintiff and that provided by Amazon, Defendant's claims of damages are unfounded. Since Defendant fails to present any evidence to support its claims for damages, those claims must be disregarded and Defendant's Motion should be denied.

  h. <u>Plaintiff was Not Required to Provide Notice of the TRO to Defendant</u>

This Court properly granted the TRO. Plaintiff's Complaint was supported by the declarations of Jose Santiago and Anna Reiter. In addition, Plaintiff attached screenshots of all of the infringing activities of defendants to support its Memorandum in Support of Entry of a TRO. Plaintiff provided specific facts to the Court regarding the Defendants infringing activities. In Plaintiff's experience, many online counterfeiters originate from jurisdictions outside of the United States and if they were provided notice of the proceedings prior the hearing, they would attempt to transfer the assets in their accounts outside of the jurisdiction of this Court. As such,

Plaintiff must initially pursue its trademark infringement matters *ex parte*. *In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Courts in the Northern District of Illinois have recognized a Plaintiff's need for secrecy until they are assured that the accounts of the alleged infringers have been secured. *See, e.g., Valentino Rossi v. The Partnerships, et al.*, No. 20-cv-4773 (N.D. Ill. Aug. 31, 2020) (unpublished) (Granting *ex parte* Temporary Restraining Order); *Hardy Way, LLC v. The Partnerships, et al.*, No. 20-cv-4854 (N.D. Ill. Aug. 31, 2020) (unpublished) (same); *Emoji Company GmbH v. The Partnerships, et al.*, No. 20-cv-4911 (N.D. Ill. Sept. 23, 2020) (unpublished) (same); *Grumpy Cat Limited v. The Partnerships, et al.*, No. 20-cv-7218 (N.D. Ill. Dec. 22, 2020) (unpublished) (same); *Grumpy Cat Limited v. The Partnerships, et al.,* No. 21-cv-238 (N.D. Ill. Jan. 28, 2021) (unpublished) (same).

In addition, the only form of communication with the Defendant internet stores listed in Schedule A is through e-mail and Defendants do not list a mailing address or a place of business address for their online storefront.

As such, the TRO was properly entered in this matter and Defendant has failed to provide sufficient facts to demonstrate otherwise. Therefore, Defendant's Motion should be denied.

    i. <u>This Court has the Authority to Seize the Defendant's Entire Account</u>

Defendant's claims that this Court may not issue a general freeze on Defendant's account is without merit. Defendant cites several cases, but upon closer review, those cases, as explained below, fail to support Defendant's conclusions or are unrelated to the present matter.

1. *SEC v. ETS Payphones, Inc.* 408 F.3d 727 (11th Cir. 2005) – the Appellate Court affirmed the District Court's ruling and determined that it was not an abuse of discretion to implement an asset freeze on the defendant's accounts to prevent potential disgorgement.

2. *In re Fredeman Litig.*, 843 F.2d 821 (5th Cir. 1988) - the Appellate Court vacated the District Court's ruling which entered a preliminary injunction prohibiting the defendants from transferring their assets because they determined that the District Court lacked jurisdiction.

3. *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund* 527 U.S. 308 (2nd Dist 1999). Plaintiffs purchased unsecured notes of defendant, Grupo Mexicano de Desarrollo, S.A. ("GMD"), which were guaranteed by the Mexican government. GMD restructured its debt and sold the notes to the detriment of its creditors. The District Court entered an injunction prohibiting GMD from transferring the notes. While an appeal of the injunction was pending, the District Court granted summary judgment in favor of the creditors and entered a permanent injunction. GMD appealed the injunction. The Supreme Court determined that the injunction should not have been issued.

4. *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002) - Defendant failed to provide the entirety of the quote which should have included "However, the court specifically noted that a restraint on assets was still proper if a suit sought equitable relief. … An asset freeze is thus proper to stop cable piracy that violates the Communications Act."

5. *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081 (7th Cir. 1994) – the District Court found that "The Lanham Act allows for fees in 'exceptional' cases, which encompass cases in which the acts of infringement are "malicious, fraudulent, deliberate or willful" and determined that defendant's activities constituted an 'exceptional' case because the defendants committed fraud and as a result awarded plaintiff attorney fees.

    j. <u>Plaintiff Served the Defendants</u>

This Court granted Plaintiff's Motion for Entry of Preliminary Injunction on May 6, 2021. Plaintiff served the Defendants in this matter on May 20, 2021. [Dkt. No. 32]. Plaintiff was delayed in serving the defendants because Plaintiff did not receive the account information from the platform Joom, until after the Preliminary Injunction had been granted. Plaintiff did not want to serve the defendants piecemeal and opted to serve them all once it had all of the email addresses from the platforms.

    j. <u>Sanctions are Not Warranted</u>

Established precedent demonstrates that Defendant is not entitled to fees, costs or

sanctions. "Ordinarily, each party bears its own attorneys' fees unless there is (1) statutory authority for fee-shifting or (2) a contractual agreement between the parties. *Berthold Types Ltd. v. Adobe Systems, Inc.* 155 F. Supp.2d 887, 889 (7th Cir. 2001). "Fees are usually awarded for a dismissal without prejudice because the defendant may be forced to defend the claim again. However, fees are not awarded when a plaintiff obtains a dismissal with prejudice because the 'defendant cannot be made to defend again.'" *Berthold Types Ltd. v. Adobe Systems, Inc.* 155 F. Supp.2d 887, 891 (N.D. Ill. Aug. 2, 2001) (J. Bucklo).

Additionally, Defendant's request for attorney's fees and costs fails to comply with Rule 54, which states that a claim for attorney's fees must "state the amount sought or provide a fair estimate of it." FRCP 54(d)(2)(iii).

Furthermore, this is not an 'exceptional' case and does not warrant the award of attorney's fees. "The Seventh Circuit recently addressed this question, and held that a case under the Lanham Act is 'exceptional' ... if the losing party was the plaintiff and was guilty of abuse of process in suing." *Specht v. Google, Inc.,* 805 F. Supp. 2d 551, 557 (N.D. Ill. 2011). The Court in *Specht* stated further that "[A]n elaborate inquiry into the state of mind of the party from whom reimbursement of attorneys' fees is sought should be avoided. It should be enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable—was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent—in other words only because it was extortionate in character if not necessarily in provable intention." *Specht v. Google, Inc.,* 805 F. Supp. 2d 551, 557 (N.D. Ill. 2011).

When Plaintiff filed its complaint, Plaintiff owned an active and valid trademark registration for its EMOJI mark. "[R]egistration gives trademark owners valuable benefits. For example, registration constitutes "prima facie evidence" of the mark's validity. § 1115(a). And

14

registration serves as 'constructive notice of the registrant's claim of ownership,' which forecloses some defenses in infringement actions." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297–98, 204 L. Ed. 2d 714 (2019). In addition, Plaintiff supported the claims in its complaint with declarations, supporting memoranda and evidence of the infringing acts. Such supporting evidence and documents demonstrate that Plaintiff's claims have legitimacy and are not frivolous as Defendant claims.

Similarly, sanctions are not warranted in this case. Courts have determined that sanctions "must be invoked with the utmost caution." *Specht v. Google, Inc.,* 805 F. Supp. 2d 551, 558 (N.D. Ill. 2011). "Counsel must act unreasonably and vexatiously to warrant sanctions. Vexatious conduct requires either subjective or objective bad faith. The moving party must show subjective bad faith "only if the conduct under consideration had an objectively colorable basis. Objective bad faith requires only reckless indifference to the law, not malice or ill will. *Specht v. Google, Inc.,* 805 F. Supp. 2d 551, 558–59 (N.D. Ill. 2011). Plaintiff's claims are well-supported by the evidence and were not brought unreasonably, vexatiously or with reckless indifference.

As such, Defendant's Motion should be denied.

    k.  <u>The Declaration of Eric Goldman Should be Excluded</u>

Plaintiff is filing concurrently a Motion to Exclude the Declaration of Eric Goldman, who should not be recognized as an expert relating to the issues in this Motion.

IV. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests this Court to deny Defendant's Motion for Sanction, Fees and Costs.

                                Respectfully submitted,

Dated: September 8, 2021

                          By:    s/Michael A. Hierl
                                  Michael A. Hierl (Bar No. 3128021)
                                  William B. Kalbac (Bar No. 6301771)
                                  Hughes Socol Piers Resnick & Dym, Ltd.
                                  Three First National Plaza
                                  70 W. Madison Street, Suite 4000
                                  Chicago, Illinois 60602
                                  (312) 580-0100 Telephone
                                  (312) 580-1994 Facsimile
                                  mhierl@hsplegal.com

                                  Attorneys for Plaintiff
                                  EMOJI COMPANY GmbH

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Response was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on September 8, 2021.

                                                    s/Michael A. Hierl