**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMOJI COMPANY GmbH,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No.: 21-cv-1739<br><br>Judge John Robert Blakey |

## PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF ERIC GOLDMAN

Plaintiff, EMOJI COMPANY GmbH ("Plaintiff"), by and through its counsel Hughes Socol Piers Resnick & Dym, Ltd., hereby moves to exclude the testimony and report of Eric Goldman ("Mr. Goldman") on the following grounds:

## LEGAL STANDARD

*Daubert* and Federal Rule of Evidence 702 require the Court to act as a gatekeeper to ensure an expert's testimony is both reliable and relevant to the action. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017). The party proffering the opinion must demonstrate that the opinion satisfies *Daubert*. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* inquiry involves a three-step evaluation to determine whether: (1) the expert is qualified; (2) the methodology applied is reliable; and (3) the testimony is relevant and will aid the trier of fact. *Gopalratnam* at 778-80.

An expert may be qualified by specialized knowledge, skill, experience, training, or education. *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993). But a court must assess not just "whether an expert . . . is qualified in general, but whether his qualifications provide the foundation for [him] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quotations omitted) (alteration in original). Rule 702 does not permit "experts to testify to any opinion based on general experience." *Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 999–1000 (N.D. Ill. 2001). Experts relying solely or primarily on experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Comm. note (2000 Amendments).

The reliability prong requires an evaluation of the reliability of the methodology used, whether the methodology or opinion was based on sufficient facts or data, and whether the methodology was correctly applied. *Gopalratnam* at 780-81. In the "quantitative" sense, 'sufficient facts or data' means that the expert considered sufficient data to employ the methodology, and to be "qualitatively adequate," an expert must rely on the type of facts or data that other experts in the field would reasonably use. *Id.* at 781 (internal quotations omitted). Additionally, courts consider whether: (1) the testimony is the result of research conducted independent of the litigation or solely for the litigation; (2) the expert has unjustifiably extrapolated to reach an unfounded conclusion; and (3) the expert considers alternative hypotheses or explanations. See, e.g., *Chaudhry v. Provident Life & Accident Ins. Co.*, No. 12- cv-5838, 2015 WL 1980253, at *2 (N.D. Ill. May 1, 2015); Am. *Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010); *Muzzey v. Kerr-McGee Chem. Corp.*, 921 F. Supp. 511, 519 (N.D. Ill. 1996)

(testimony based on research conducted independent of the litigation provides important, objective proof of reliability).

Expert testimony must "rise above subjective belief or unsupported speculation." *Lyons v. Leatt Corp.*, 322 F.R.D. 327, 338-39 (N.D. Ill. 2017); see also *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771–72 (7th Cir. 2014) (experts must rely on facts or data, not subjective impressions); *Erikson* at 1000 (experts may not make "bald assertions of opinion without any support"); *Phares v. Manheim Remarketing, Inc.*, No. 14-cv-1190, 2016 WL 787627, at *2 (S.D. Ind. Feb. 18, 2016) (a court may not "simply tak[e] the expert's word for it") (quotations and citation omitted). Courts must exclude opinion based on bare assertions or the ipse dixit of the expert. *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999). And if there is an analytical gap between the data and the opinions offered, the opinion is inadmissible. See *Lyons* at 339.

Finally, to assist the trier of fact, expert testimony must be both relevant to the case and be on a subject outside the understanding of a layperson. See *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *Sanders v. City of Chicago Heights*, No. 13-cv-221, 2016 WL 4398011, at *4 (N.D. Ill. Aug. 18, 2016) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). Where an expert offers no more than a "bottom line" conclusion, he does not aid the jury. *Takata Corp* at 759. And when a jury can draw inferences on their own without the assistance of the expert, expert testimony does not aid the jury. See *Aponte v. City of Chicago*, No. 09-cv- 8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011).

## ARGUMENT

1. ### Mr. Goldman's Opinions are Not Relevant to the Issues in this Matter

Mr. Goldman's opinions should be disregarded by this Court because his opinions regarding cases previously filed by Plaintiff lack relevance to the present matter. Evidence must be relevant before it is admissible. *United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014) ("All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not.'"). Relevant evidence, as defined by Rule 401 of the Federal Rules of Evidence, is any evidence that "has a tendency to make a fact of consequence more or less probable." *United States v. Richards,* 719 F.3d 746, 760-761 (7th Cir. 2013); *see also Gomez,* 763 F.3d at 853 ("Rule 401 defines relevant evidence as that which is both probative (having 'any tendency to make a fact more or less probable than it would be without the evidence') and material (the fact must be 'of consequence in determining the action').").

Irrelevant evidence cannot, by definition, provide any assistance to the Court. In the present case, Mr. Goldman's opinions regarding the number of previously-filed lawsuits (Goldman Decl., ¶¶ 18, 19), the number of defendants in those cases (*Id.* ¶¶ 19, 20), his guess as to the amount of settlements per case (*Id.* ¶¶ 21, 27), and the number of defendants who decided to settle with Plaintiff in each case (*Id.* ¶¶ 21, 32) should be dismissed because those opinions are neither probative nor material to the present matter, are based upon speculation and conjecture; and he has not apprised the Court as to the methodology by which those assessments were made.

Mr. Goldman's speculation concerning the number of voluntary dismissals in other cases filed by Plaintiff have no bearing on the present case. The facts in the present case differ from those in other cases prosecuted by Plaintiff and a finding in one of those cases has no bearing on

the present matter. As such, Plaintiff submits that this Court should question the accuracy and reliability of Mr. Goldman's presumptions. Mr. Goldman fails to support his conclusions with any credible evidence which would assist this Court in following the methodology and reliability of his opinions. In short, the matters outlined in Mr. Goldman's Declaration concerning actions taken or not taken by Plaintiff in other lawsuits are not relevant, and indeed are superfluous, to the issues in the present matter.

Therefore, the proposed declaration of Mr. Goldman is only marginally, if at all, relevant to the present case, and should be excluded/stricken.

**2. Mr. Goldman's Opinions are Unreliable Because They are Based on Research and Analysis Conducted by CafePress's Defense Counsel.**

Mr. Goldman's opinion, as an initial matter, is unreliable as it mirrors the same data and argument that Defendant CaféPress has relied upon in each of its attempts to obtain attorneys' fees and costs from Plaintiff post dismissal. Defendant CaféPress has filed multiple motions after being dismissed from this case on May 24, 2021. Defendant has failed to prevail on each filing. (See the Procedural History on pages 2-3 of the concurrently filed Response to Defendant's Motion for Fees, Costs and Sanctions.]

In their amended third bite at the apple, Defendant has now solicited the declaration of Eric Goldman, a California Law Professor, to beef up its spurious claim for ever increasing attorneys' fees. Instead of allowing Mr. Goldman to conduct his own independent investigation as required by the Seventh Circuit, CaféPress has clearly spoonfed Mr. Goldman his talking points and data set. *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1026 (N.D. Ill. 2011) (finding expert's uncritical reliance on summaries of case materials provided by counsel did not provide a reliable basis for expert's opinion).

5

CaféPress has consistently based its entire argument on a shallow analysis of basic Bloomberg/Pacer search data, selectively cherry-picking Plaintiff's cases within the N.D. Illinois with little regard for their context. CaféPress has then consistently misconstrued the data in an attempt to paint Plaintiff in an unflattering light. Mr. Goldman's analysis and indicia of trademark trolling, as outlined in his declaration, closely mirror the same complaints and arguments directed at Plaintiff by Defendant CaféPress. Mr. Goldman's sole data set is limited to the same data that CaféPress has used in its unsuccessful attempt to obtain attorneys' fees from Plaintiff. Namely, Mr. Goldman relied on a Bloomberg/Pacer search and failed to expand his search to any other data or materials that might be relevant to the present matter.

### 3. Mr. Goldman's Opinion that EMOJI COMPANY GmbH is a Trademark Troll is Unreliable and Not Based on Any Reliable Methodology or Data.

Mr. Goldman himself concedes that there is no accepted methodology or accepted definition for what he terms a "trademark troll". Further, he concedes that trademark trolling is indistinguishable from that of proper intellectual property enforcement. "The definition of an IP troll lacks a single universally accepted definition, and it is not possible to precisely distinguish trolling from legitimate IP enforcement practices." [Dkt. No. 80, p. 15]. As such, Mr. Goldman concedes that he cannot tell the difference between proper enforcement of intellectual property rights, as in the present case, and trademark trolling generally.

Defendant's entire argument relies on the ability to determine the difference between alleged trademark trolling and proper enforcement of trademark infringement. As Mr. Goldman has conceded that he cannot determine the difference with any reliability, his opinion cannot meet the threshold standard for expert testimony in this matter. To assist the trier of fact, expert testimony must be both relevant to the case and be on a subject outside the understanding of a layperson. See *Dhillon* at 865; *Sanders* at *4 ("Expert testimony does not assist the trier of fact

when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). If Mr. Goldman himself cannot tell the difference, he is in no position to aid the trier of fact in doing so.

Mr. Goldman lists a set of nonrelated indicia of trademark trolling. He fails to indicate any industry standard or legal standard for his definition of trademark trolling or his list of indicia upon which his opinion is based. Instead, he states, "…based on my research into IP enforcement techniques since 2002, I have identified several indicia of IP trolls…". He fails to indicate how he arrived at this list of indicia or explain his methodology in choosing why these particular indications are relevant to trademark trolling in general or alleged trademark trolling in the present case. Rule 702 does not permit "experts to testify to any opinion based on general experience." *Erickson* at 995.

Further, Mr. Goldman's entire data set comprises a single Bloomberg/Pacer search. Courts must exclude opinion based on bare assertions or the ipse dixit of the expert. *Clark* at 750. And if there is an analytical gap between the data and the opinions offered, the opinion is inadmissible. See *Lyons* at 339. There is no indication that Mr. Goldman made any inquiry into Plaintiff as a corporate entity, into its trademark registrations both in the United States and worldwide, or into Plaintiff's business practices generally. He made no inquiry into Plaintiff's network of licensed partners, including Sony Pictures Animation (The Emoji Movie), which would have easily revealed that Plaintiff is engaged in the use of its trademarks in commerce. For example, Mr. Goldman could have easily checked to determine that EMOJI COMPANY GmbH is acknowledged in the film credits as the official owner of the EMOJI Trademark. Limiting himself strictly to Bloomberg/Pacer data fails to meet the standard for expert testimony as set by the Federal Rules of Evidence and the Seventh Circuit.

WHEREFORE, for the reasons set forth in this Motion, Plaintiff, EMOJI COMPANY GmbH, respectfully requests that the Declaration of Eric Goldman be excluded in its entirety.

Respectfully submitted,

Dated: September 8, 2021

By:     s/Michael A. Hierl
        Michael A. Hierl (Bar No. 3128021)
        William B. Kalbac (Bar No. 6301771)
        Robert P. McMurray (Bar No. 6324332)
        Hughes Socol Piers Resnick & Dym, Ltd.
        Three First National Plaza
        70 W. Madison Street, Suite 4000
        Chicago, Illinois 60602
        (312) 580-0100 Telephone
        mhierl@hsplegal.com
        wkalbac@hsplegal.com
        rmcmurray@hsplegal.com
        Attorneys for Plaintiff

        EMOJI COMPANY GmbH

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies on September 8, 2021 that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system.

/s/ *Michael A. Hierl*