UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH, ) | |
| ) | Case No. 21-cv-1739 |
| Plaintiff, ) | |
| ) | Judge: Hon. John Robert Blakey |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| THE INDIVIDUALS, CORPORATIONS, ) | |
| LIMITED LIABILITY COMPANIES, ) | |
| PARTNERSHIPS, AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE A HERETO, ) | |
| ) | |
| Defendants. ) | |

**CAFEPRESS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE THE
TESTIMONY OF ERIC GOLDMAN**

The Court should deny Plaintiff's motion to exclude Professor Goldman's testimony, and allow Professor Goldman to testify, because Professor Goldman is indisputably a qualified legal expert with relevant expertise in intellectual property law, internet law, and emojis; because Professor Goldman's opinions apply that expertise to the facts of this case; because there is no dispute that the factual data Professor Goldman relies upon is accurate; because Professor Goldman carefully explains his methodology and its limitations; and because Professor Goldman's analysis synthesizes extensive factual data the Court would have to otherwise spend many hours reviewing. Plaintiff's objections – to the extent they are valid at all –go to the weight, not the sufficiency of the evidence.

**I.   PLAINTIFF DOES NOT DISPUTE PROFESSOR GOLDMAN'S QUALIFICATIONS**

Plaintiff does not dispute that Professor Goldman's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" – the first requirement of Rule 702. Plaintiff does not dispute Professor Goldman has taught Internet Law since 1996, that

he has published a casebook on Internet Law, or that he is one of the most cited Internet Law and Intellectual Property Law scholars in the United States. (Goldman Decl., Dkt. No. 80, ¶¶ 5-9.) Plaintiff does not dispute that Professor Goldman has written extensively regarding "emoji law." (Id. ¶ 12.) Accordingly, it is undisputed that Professor Goldman has specialized knowledge on precisely the matters at issue in this case – namely, how various intellectual property laws apply to the internet and emojis.

II.     **PROFESSOR GOLDMAN'S OPINION IS HELPFUL TO THE COURT**

Professor Goldman's opinion is also helpful to the Court. As Professor Goldman explains, Plaintiff has filed dozens of cases in this District, resulting in dozens of separate dockets and countless orders from various judges. Defense counsel and Professor Goldman invested many hours gathering, reviewing, analyzing, and synthesizing these dozens of dockets and hundreds upon hundreds of docket entries. This included attempting to locate sealed docket entries, as well as efforts to estimate the number of defendants in cases where that information is still sealed. All of this assists the trier of fact because otherwise the Court would have to invest similar amounts of time simply to understand the scope of Plaintiff's filings, and to understand undisputed facts, such as the fact that Plaintiff's intentional failings with regard to service of process and notice extend well beyond this case.

Professor Goldman's analysis also provides additional value to the Court by explaining patterns in Plaintiff's behavior that may not be as transparent to the Court as they are to an experienced intellectual property specialist – such as the generic nature of Plaintiff's trademarks, and the steps Plaintiff has taken to avoid any substantive challenge to its trademarks.

II.     **PROFESSOR GOLDMAN'S DECLARATION IS RELEVANT**

Plaintiff simultaneously admits Professor Goldman's Declaration is relevant to the case, (Mot. p. 5.) and offers conclusory arguments that Professor Goldman's opinions are not relevant

to the case. (Mot. p. 4.) Plaintiff cannot have it both ways.

Plaintiff argues Mr. Goldman's opinions regarding the number of previously-filed lawsuits and the number of Defendants Plaintiff has sued are not relevant to this case, but Plaintiff has yet to explain why it falsely alleged that CafePress is a Chinese company likely to hide assets outside of the country. Professor Goldman's summary of the number of cases Plaintiff has filed provides an explanation – that Plaintiff is filing these cases in such high volume that it is not conducting any pre-filing investigation of its allegations. These opinions are relevant to demonstrating why this case is "exceptional" and the extent to which the Court should issue sanctions.

Plaintiff argues that Professor Goldman's opinions regarding the large number of small settlements is not relevant. But Plaintiff's habit of entering into small (or zero-dollar) settlements with anyone who might challenge its case on the merits is relevant to whether Plaintiff is pursuing these cases in good faith, and relevant to the amount of sanctions.

Plaintiff argues that its behavior in other cases has "no bearing" on this case. But the entire point of Professor Goldman's declaration is to demonstrate for the Court why Plaintiff's pattern of behavior matters. Plaintiff has not been forthcoming with this Court regarding its efforts to either serve the defendants or provide them notice of the Court's injunctions. Professor Goldman's declaration demonstrates that this behavior is not inadvertent, but rather, that it is characteristic of how Plaintiff has acted in its other cases, and that it is part of Plaintiff's strategy.

Finally, with no apparent sense of irony, Plaintiff argues "the facts in the present case differ from those in other cases prosecuted by Plaintiff and a finding in one of those cases has no bearing on the present matter." (Mot. p. 4.) This argument is preposterous. The whole reason Plaintiff is facing a motion for fees, costs and sanctions is because it made false allegations

3

against CafePress – the result of Plaintiff recycling its "cut and paste" allegations against thousands and thousands of defendants. As CafePress demonstrated in its motion and supporting documents, Plaintiff has been warned about this in the past, and disregarded those warnings in the pursuit of higher profits from this scheme. (Nelson Decl., Dkt. No. 81, ¶ 13.) Professor Goldman's analysis of Plaintiff's behavior across the dozens of cases it filed is relevant to determining this is an exceptional case, and to sanctions, and provides information that the Court would not otherwise have.

### III. PROFESSOR GOLDMAN'S DECLARATION IS SUPPORTED BY RELIABLE EVIDENCE

Plaintiffs next claim that Professor Goldman's analysis should be excluded because it is purportedly "based on research and analysis conducted by CafePress' Defense Counsel." But Rule 703 explicitly provides that an expert may rely on "data in the case that the expert has been made aware of." F.R.E. 703. "An expert witness is permitted to use assistants in formulating his expert opinion." *Dura Auto. Sys. Of Inc., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002). While "[a]nalysis becomes more complicated if the assistants aren't merely gofers or data gatherers but exercise professional judgment that is beyond the expert's ken," *Id.* at 613, that simply is not the case here. To the extent Professor Goldman relied on any of the dockets or orders compiled by Defendant's counsel,[1] that is exactly the kind of information a legal expert would routinely examine, and it is purely factual information which does not reflect opinions or judgment of someone other than Professor Goldman.

In any event, Plaintiff does not identify anything *unreliable* about its *own* publicly available court filings, which are what Professor Goldman relies upon. Professor Goldman's analysis adds

---

[1] Professor Goldman's declaration states that he relied on his own research; Plaintiff's argument otherwise is merely unsupported argument.

4

value to these filings by analyzing trends across Plaintiff's many cases – thereby providing helpful information to the trier of fact (the Court), that the trier of fact otherwise would not have.

## IV. PROFESSOR GOLDMAN'S METHODOLOGY IS RELIABLE AND APPROPRIATE

Plaintiff's attacks on Professor Goldman's methodology are also without merit. Plaintiff argues that Professor Goldman "concedes" that trademark trolling is "indistinguishable" from proper intellectual property enforcement, but that mischaracterizes Professor Goldman's opinion. Professor Goldman identified several indicia of an intellectual property troll, based on his undisputed and extensive expertise. (Goldman Decl., Dkt. No. 80, ¶ 15.) While he acknowledges that some of these factors may be present in cases involving legitimate intellectual property enforcement, he goes on to explains how *all* of these factors are present in this case. (*Id.* ¶¶ 17-33.) This kind of factor-based analysis is a common method of legal analysis. *Meds. Co. v. Mylan Inc.*, 2014 U.S. Dist. LEXIS 61084, *16-17, Case No. 11-cv-1285 (N.D. Ill. May 2, 2014) (ruling that a legal expert may testify in bench trial on factors relating to inequitable conduct claim) (St. Eve, J.).

Plaintiff also argues that Professor Goldman "fails to indicate how he arrived at this list of indicia," but Professor Goldman *did* explain that he has for years tracked the efforts of intellectual property trolls (*Id.* ¶ 10), written about how IP trolls could weaponize emojis (Id. ¶ 12), and even trained judges on emoji law (*Id.*). To the extent Professor Goldman acknowledges it can be challenging to "define" intellectual property trolling in the abstract, his opinion clearly lays out his methodology and explains how *every* factor is present in this case.

Finally, Plaintiff weakly argues Mr. Goldman could have watched the film-credits of a widely-panned movie (*See, e.g.*, https://www.rottentomatoes.com/m/the_emoji_movie) to see that Plaintiff is "acknowledged" in bowels of the film credits – while at the same time Plaintiff is refusing to produce *any* of the purported trademark licenses it purports to rely on. But Plaintiff's alleged appearance in those film credits would not tell Professor Goldman anything about how that license

5

agreement came into existence, whether it arose under a threat of litigation, whether any money changed hands, or what relevance that purported license has to this case – as the goods and services at issue in this case are decidedly *not* a movie and make no reference to the aforementioned movie. CafePress would certainly be interested in comparing *all* of Plaintiff's licenses to the arguments and allegations it has made in its many cases, but that information is not available CafePress, Professor Goldman or even the Court.

To be sure, Goldman's methodology "is not terribly complicated, but the questions he was asked to answer to not necessarily call for complexity." *Uncomon v. Spiegen, Inc.*, 305 F. Supp. 3d 825 (N.D.Ill. 2018) (Blakey, J.). Professor Goldman is not offering legal conclusions regarding ultimate questions in the case. Rather, he offers opinions that provide context for Plaintiff's actions, and which will assist the Court in determining fees, costs and sanctions. This is not unlike a legal expert testifying on the issue in inequitable conduct in a patent case. *Meds. Co.*, 2014 U.S. Dist. LEXIS 61084, *16-17 (N.D. Ill. May 2, 2014).

## CONCLUSION

In view of the foregoing, CafePress respectfully request the Court deny Plaintiff's motion to exclude Professor Goldman's declaration, and allow Professor Goldman to testify.

DATED: September 17, 2021　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　GREENBERG TRAURIG, LLP

　　　　　　　　　　　　　　By:　/s/ Cameron M. Nelson
　　　　　　　　　　　　　　　　　Cameron M. Nelson
　　　　　　　　　　　　　　　　　GREENBERG TRAURIG, LLP
　　　　　　　　　　　　　　　　　77 West Wacker Dr., Suite 3100
　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　Tel: 312-456-8400
　　　　　　　　　　　　　　　　　nelsonc@gtlaw.com

　　　　　　　　　　　　　　　　　Ian C. Ballon (admitted *pro hac vice)*

6

GREENBERG TRAURIG , LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700

*Attorneys for PlanetArt, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing **CAFEPRESS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF ERIC GOLDMAN** with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: September 17, 2021             /s/ Cameron M. Nelson
                                      CAMERON M. NELSON